130 A.3d 752

**EQT PRODUCTION COMPANY, Appellant**

v.

**DEPARTMENT OF ENVIRONMENTAL PROTECTION**
of the Commonwealth of Pennsylvania, Appellee.

Supreme Court of Pennsylvania.

Argued Nov. 17, 2015.

Decided Dec. 29, 2015.

Robert C. Heim, Esq., Philadelphia, Dechert LLP, for Chamber of Commerce of the United States of America, Amicus Curiae.

Robert L. Byer, Esq., Duane Morris LLP, Leonard Fornella, Esq., Kevin J. Garber, Esq., Pittsburgh, Babst, Calland, Clements & Zomnir, P.C., for EQT Production Company.

Geoffrey James Ayers, Esq., Pennsylvania Department of Environmental Protection, for Department of Environmental Protection of the Commonwealth of Pennsylvania.

BEFORE: SAYLOR, C.J., EAKIN, BAER, TODD, STEVENS, JJ.

## *OPINION*

Chief Justice SAYLOR.

In this direct appeal, we consider whether a company threatened by an administrative agency with ongoing, multi-million-dollar penalties per such agency's interpretation of a statutory regime has the right, immediately, to seek a judicial declaration that the agency's interpretation is erroneous.

Via Pennsylvania's Land Recycling and Environmental Remediation Standards Act,[1] otherwise known as Act 2, the General Assembly has created a scheme for establishing "cleanup standards" applicable to voluntary efforts to remediate environmental contamination for which a person or entity may bear legal responsibility. 35 P.S. § 6026.102(4). Act 2, however, specifies that it does not obviate penalties otherwise authorized by law for pollution of the land, air, or water in the Commonwealth. *See id.* §§ 6026.102(5), 6026.106(b), 6026.905(b).

Various penalties associated with pollution pertain under the Clean Streams Law.[2] Substantively, the enactment requires, among other things, that no person or municipality "shall

1. Act of May 19, 1995, P.L. 4, No. 2 (35 P.S. §§ 6026.101–6026.908).
2. Act of June 22, 1937, P.L.1987 (as amended 35 P.S. §§ 691.1–691.1001).

place or permit to be placed, or discharged or permit to flow, or continue to discharge or permit to flow, into any waters of the Commonwealth any industrial wastes," except as otherwise provided in the enactment. 35 P.S. § 691.301; *see also id.* §§ 691.307 (also regulating industrial waste relative to Commonwealth waters), 691.401 (pertaining to "other pollutions"), 691.611 (specifying that it is unlawful, *inter alia,* to cause water pollution and subjecting offending persons and municipalities to the law's penalty provisions). The penalties include civil assessments of up to $10,000 per day for each separate violation. *See* 35 P.S. § 691.605(a).

Appellant EQT Production Company ("EPC"), owns and operates natural gas wells in the Commonwealth. In May 2012, the company notified Appellee, the Department of Environmental Protection (the "Department" or "DEP"), that it had discovered leaks in one of its subsurface impoundments containing water that had been contaminated during hydraulic fracturing operations. Subsequently, EPC cleared the site of impaired water and sludge and commenced a formal cleanup process pursuant to Act 2.

The Department took the position that the discharge of contaminated water implicated civil penalties under the Clean Streams Law. In May 2014, the agency tendered to EPC a proposed "Consent Assessment of Civil Penalty," seeking to settle the penalty question via a payment demand of $1,270,871, subsuming approximately $900,000 attending asserted ongoing violations. The claim of continuing violations was based on DEP's position that each day in which contaminants remain in the subsurface soil and passively enter groundwater and/or surface water constitutes a violation, thus implicating serial, aggregating penalties. *See, e.g.,* Complaint for Civil Penalties in *DEP v. EQT Prod. Co.,* No. 2014–140–CP–L, at ¶ 60 ("To the extent that flowback water from Marcellus drilling operations, and/or its constituents, continues to be present in any water of the Commonwealth after the date that this Complaint is filed with the [EHB], the pollution continues, and [EPC] continues to incur liability for additional penalties.").

EPC disputed the Department's approach to the Clean Streams Law, maintaining that: penalties cannot exceed those accruing during the time period in which contaminants actually were discharged from the company's impoundment; all such actual discharges ended in June 2012; and the Act 2 regime controlled the extent of the essential remediation efforts. In an effort to vindicate this position, EPC commenced an original-jurisdiction proceeding in the Commonwealth Court,[3] per the Declaratory Judgments Act.[4] The company asserted that it lacked any viable administrative remedy, while observing that the Department recently also had advanced its continuing-violation interpretation in *DEP v. Sunoco Logistics Partners, LP,* EHB Dkt. No. 2014-020-CP-R. Additionally, EPC averred that the legal question that it posed was adequately developed and ripe for judicial review; it would suffer direct, immediate, and substantial hardship if review was delayed; and the action would settle controversies otherwise indicative of immediate and inevitable litigation. *See generally Commonwealth, Office of the Governor v. Donahue,* 626 Pa. 437, 448, 98 A.3d 1223, 1229 (2014) (discussing such prerequisites to judicial redress under the Declaratory Judgments Act).

A few weeks later, the Department lodged a "Complaint for Civil Penalties" in the Environmental Hearing Board (the "Hearing Board" or the "EHB"), seeking more than $4,500,000 from EPC, supplemented by continuing levies of up to $10,000 per day. *See* Complaint for Civil Penalties in *DEP v. EQT Prod. Co.,* No. 2014-140-CP-L, at 18. DEP also interposed preliminary objections in the declaratory judgment proceeding initiated by EPC, asserting that the Commonwealth Court lacked jurisdiction to entertain the action.

In its preliminary objections, the Department asserted that an adequate administrative remedy was available to EPC before the Hearing Board; indeed, the agency stressed that

3. The Commonwealth Court's original jurisdiction over actions against a Commonwealth agency is undisputed. *See* 42 Pa.C.S. § 761.

4. Act of July 9, 1976, P.L. 586, No. 142, § 2 (as amended 42 Pa.C.S. §§ 7531–7541).

the subject matter of the company's declaratory judgment action had been put squarely before the EHB both in the proceedings commenced by DEP against EPC and in the *Sunoco* litigation. In this regard, the Department highlighted that the Declaratory Judgments Act specifically prescribes that declaratory relief is unavailable with respect to proceedings within the exclusive jurisdiction of administrative tribunals. *See* 42 Pa.C.S. § 7541(c)(2). Furthermore, the agency contended, at the time EPC commenced the declaratory judgment proceedings, no issue had yet matured to the point of an actual controversy. *See, e.g.,* Preliminary Objections in *EQT Prod. Co. v. DEP,* No. 485 M.D. 2014, at 7 ("As alleged in the Complaint, with respect to [EPC], the status of events between [EPC] and the Department is a rejected settlement offer."). More generally, DEP characterized the declaratory judgment action as an inappropriate "pre-emptive strike." *Id.* Indeed, according to the Department, any controversy would cease if the EHB decided to reject the agency's continuing-violation interpretation.

In a single-judge opinion and order, the Commonwealth Court sustained DEP's preliminary objections on the basis that exclusive authority to determine the appropriate penalty was reposited in the Hearing Board. *See EQT Prod. Co. v. DEP,* 114 A.3d 438 (Pa.Cmwlth.2015) (Friedman, S.J.). Initially, the court recognized that the express purpose of the Declaratory Judgments Act is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." *Id.* at 441 (quoting 42 Pa.C.S. § 7541(a)). Nevertheless, the court explained that the judiciary has interposed prudential prerequisites, including the need to demonstrate an interest that is direct, immediate, and substantial, as well as to establish the existence of an actual controversy related to invasion or threatened invasion of the petitioner's legal rights. *See id.* (quoting *Waslow v. DOE,* 984 A.2d 575, 580 (Pa.Cmwlth.2009)); *accord Donahue,* 626 Pa. at 448, 98 A.3d at 1229. The court found this controversy threshold to be lacking, given that DEP merely expresses legal opinions when it makes penalty recommendations;

whereas, it is the Hearing Board that ultimately determines and imposes the appropriate penalties. *See EQT Prod. Co.*, 114 A.3d at 441 (citing *Westinghouse Elec. Corp. v. DEP*, 705 A.2d 1349, 1353 (Pa.Cmwlth.1998)).

The Commonwealth Court also distinguished *Donahue*, in which this Court found a declaratory judgment action to have been proper, as an instance in which an agency had *actually imposed* its interpretation of a statute upon other government agencies. *See id.* In this regard, the court again stressed that DEP is powerless to impose its interpretation of the Clean Streams Law upon EPC. *See id.* As such, the court deemed EPC's allegation of harm to be "merely speculative." *Id.*

In its present direct appeal, EPC characterizes the Department's reading of the Clean Streams Law as "unlawful and unprecedented," Brief for Appellant at 10, and maintains that it has direct, substantial, and immediate consequences for the company. In this regard, EPC asserts that the continuing-violation interpretation:

(i) imposes ongoing, indefinite civil penalty liability for the mere presence of constituents in waters of the Commonwealth, and (ii) forces EPC to continue to spend significant additional money to clean up the site, well beyond what is legally required under Act 2, or face massive civil penalties for an indefinite period of time as long as any detectable amount of a substance remains present in waters of the Commonwealth.

Brief for Appellant at 9; *see also id.* ("Regardless of any remediation efforts, the Department's interpretation places EPC in a world of constantly accumulating penalties with no legal or administrative remedy."). As such, EPC strongly differs with the Commonwealth Court's characterization of the harm that it faces as speculative. The company also explains that its complaint is centered on discrete legal questions, primarily, whether the mere presence of contaminants in the environment represents a "discharge" under the Clean Streams Law, and does not entail a fact-based inquiry subject

to essential vetting through the administrative hearing process.

EPC regards its position concerning justiciability, as well as the recent vindication of an instance of declaratory judgment review in *Donahue,* as consistent with the requirements of the Pennsylvania Constitution that courts are to be open and remedies are not to be denied.[5] Along these lines, the company's *amicus,* the Chamber of Commerce of the United States of America, advocates as follows:

> Like any of the countless businesses—large and small—that are active in Pennsylvania, [EPC] has a right to understand what Pennsylvania statutes do and do not allow. This case is not about trying to avoid doing what the law requires. It is about *knowing what* the law requires—and having a reasonably prompt determination of its requirements, consistent with principles of due process, so that a business can arrange its affairs accordingly. Having such certainty is especially important where, as here, a business not only disagrees with a government agency's interpretation of the law but also is subject to ever-increasing penalties each day that it does not comply with the government agency's interpretation.

Brief for *Amicus* Chamber of Commerce of the U.S. at 1 (emphasis in original).

Both EPC and its *amicus* consider the present case to be analogous to the circumstances before the Supreme Court of the United States in *Sackett v. EPA,* 566 U.S. 120, 132 S.Ct. 1367, 182 L.Ed.2d 367 (2012). There, the Supreme Court held that the federal judiciary was invested with jurisdiction to declare the rights of landowners after the Environmental Protection Agency interpreted the federal Clean Water Act as prohibiting the filling of a segment of their property with dirt and rock and as justifying mounting, daily penalties pending abatement. *See id.* at 123–24, 132 S.Ct. at 1370. Recognizing

5. *See* PA. CONST. art. I, § 11 ("All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have a remedy by due course of law, and right and justice administered without sale, denial or delay.").

that the main issue before the Supreme Court in *Sackett* concerned whether a compliance order represented "final agency action" under the federal Administrative Procedure Act, 5 U.S.C. § 704, EPC and its *amicus* observe that the Supreme Court's opinion nevertheless touches on the sorts of prudential considerations pertinent to declaratory judgment review in Pennsylvania. *See, e.g., id.* at 130–31, 132 S.Ct. at 1374 (indicating that "there is no reason to think that the Clean Water Act was uniquely designed to enable the strong-arming of regulated parties into 'voluntary compliance' without the opportunity for judicial review"). They also draw particular attention to Justice Alito's concurrence, in which he opined that denying judicial review to individuals potentially subject to mounting penalties of up to $75,000 per day pending enforcement measures within the exclusive purview of a government agency was "unthinkable." *Id.* at 132, 132 S.Ct. at 1375 (Alito, J., concurring).

Finally, EPC notes that courts routinely entertain declaratory judgment requests in insurance-coverage disputes rather than forcing parties bearing risks of loss to breach insurance contracts or await commencement of suit by others. *See, e.g., Prudential Prop. & Cas. Ins. Co. v. Sartno,* 588 Pa. 205, 208, 903 A.2d 1170, 1172 (2006). The company urges this Court to treat its own circumstances as no less compelling.

The Department's present arguments are consistent with the position developed in its preliminary objections and in the Commonwealth Court's opinion sustaining them. DEP maintains that the proceedings before the Hearing Board serve as the appropriate and exclusive vehicle available to resolve challenges to its interpretation of the Clean Streams Law's penalty provisions, *see, e.g.,* Brief for Appellee at 11 (citing 35 P.S. §§ 691.605, 7514(a)), and that the requirement of exhaustion of administrative remedies squarely pertains.[6] The De-

6. *See, e.g.,* Brief for Appellee at 12 (citing *Burnham Coal Co. v. PBS Coals, Inc.,* 65 Pa.Cmwlth. 86, 89, 442 A.2d 3, 5 (1982) ("[T]o the extent that the present declaratory judgment action ... seeks a judicial declaration that '[a company] has no liability for any violations of the Clean Streams Law being assessed against [it] by [DEP],' the action clearly is placed outside the original declaratory judgment jurisdiction of this

partment continues to stress that it lacks the ability to unilaterally impose penalties, thus rendering any harm prior to imposition by the Hearing Board as indirect, remote, and speculative. DEP also highlights a concern expressed by Madame Justice Todd, in *Donahue*, that too broad an approach to justiciability in the declaratory judgments context will "embroil[ ] [courts] in poorly-developed, ill-considered, and largely academic debates examining other governmental entities' legal judgments." *Donahue*, 626 Pa. at 486, 98 A.3d at 1252 (Todd, J., concurring).

The general framework governing the availability of declaratory relief is amply developed within our case law, as most recently reflected in *Donahue*, including the acknowledgement of the remedial nature of the Declaratory Judgments Act and the policy of applying it liberally; the prudential requirement of a real or actual controversy; the general prescription for exhaustion of administrative remedies; and the longstanding exception pertaining to substantial pre-enforcement challenges to agency regulations. *See Donahue*, 626 Pa. at 448, 98 A.3d at 1229; *accord Bayada Nurses, Inc. v. DLI*, 607 Pa. 527, 541–44, 8 A.3d 866, 874–76 (2010).

Upon consideration, we deem this case to present a sufficient, actual controversy and to fall within the class of disputes that are a proper subject of pre-enforcement judicial review. We recognize that the seminal decision in the pre-enforcement line involved a challenge to published administrative regulations, *see Arsenal Coal Co. v. Commonwealth*, 505 Pa. 198, 200–01, 477 A.2d 1333, 1335 (1984); whereas the present scenario concerns an agency's less formal interpretation of a statute. Nevertheless, the governing rationale of *Arsenal Coal* did not focus on the formality of the administrative action, but rather, centered upon burdensome impact upon those subject to regulation. *See id.* at 209, 477 A.2d at 1339

court by 42 Pa.C.S. § 7541(c)."), *aff'd per curiam*, 499 Pa. 59, 451 A.2d 443 (1982), and *Faldowski v. Eighty Four Mining Co.*, 725 A.2d 843, 846 (Pa.Cmwlth.1998) (indicating that a declaratory judgment action should not be employed "to short-circuit the administrative process and have the law determined without the benefit of the administrative agency first reviewing the matter")).

("Where the effect of the challenged regulations upon the industry regulated is direct and immediate, the hardship thus presented suffices to establish the justiciability of the challenge in advance of enforcement."). Consistent with this approach, a majority of this Court in *Donahue* deemed the distinction between formal and less formal agency policies to be one "without a difference," where either would have adverse, direct, and immediate effects upon salient rights or interests. *Donahue*, 626 Pa. at 450, 98 A.3d at 1231.

Thus, in *Arsenal Coal*, a group of coal mine operators and producers were permitted to proceed with a pre-enforcement challenge to comprehensive regulatory requirements promulgated by the Environmental Quality Board, so as to clarify the operators' and producers' obligations under the law and avoid unnecessarily protracted proceedings. *See Arsenal Coal*, 505 Pa. at 210–11, 477 A.2d at 1339–40. In *Bayada Nurses*, a pre-enforcement challenge advanced by a home health care provider was found to be justiciable, since judicial review would eliminate substantial expense and uncertainty in the day-to-day operations of such providers and alleviate costly and inefficient piecemeal enforcement measures. *See Bayada Nurses*, 607 Pa. at 544–45, 8 A.3d at 876. In *Donahue*, the Office of the Governor appropriately pursued declaratory relief in challenging the Office of Open Records' interpretation of statutory provisions governing the submission of open-records requests, in light of the adverse, direct, and immediate impact of that interpretation on Commonwealth agencies. *See Donahue*, 626 Pa. at 450, 98 A.3d at 1230–31. And, in the present case, EPC will be permitted to pursue its substantial challenge to the Department's continuing-violation interpretation in the Commonwealth Court, given the company's potential exposure to potent, ongoing civil penalties for which DEP maintains the company is liable.[7]

7. Responsive to the Commonwealth Court's attempt to distinguish *Donahue* as involving an instance in which an administrative agency actually had imposed its interpretation of a statute upon others, we neither read *Donahue* as relying on this factor nor believe that the consideration carries dispositive weight. Rather, the uncertainties facing EPC while under the threat of ballooning penalties under DEP's

Our decision might be different had the Department advanced a persuasive case that there are material factual dynamics involved in evaluating the validity of its continuing-violation interpretation, or that the application of the specialized expertise of the Hearing Board is essential to a full and fair understanding of it. Here, however, DEP has limited its argument along these lines to regurgitation of the landscape of potentially relevant environmental statutes and a conclusory pronouncement of a need to develop a full factual record before the EHB. *See* Brief for Appellee at 16–18. This presentation offers little to contradict EPC's assertion that its challenge to the agency's continuing-violation interpretation presents only questions of law presently amenable to judicial review. *Accord LeClerc v. Webb,* 419 F.3d 405, 413–14 (5th Cir.2005) (observing that a pre-enforcement challenge "is generally ripe if any remaining questions are purely legal ... [and] further factual development" is not required for effective judicial review).

Consistent with the concerns expressed in *Sackett,* we also treat EPC's inability in its own right to implicate the sole avenue available for quasi-judicial administrative review as a factor favoring original-jurisdiction judicial review. *See Sackett,* at 127–28, 132 S.Ct. at 1372; *accord Bayada Nurses,* 607 Pa. at 544, 8 A.3d at 876. This consideration may be offset to some degree by the Department's somewhat proximate, but subsequent, initiation of a proceeding before the EHB. We conclude, however, that such commencement did not sufficiently alleviate the hardships facing EPC so as to divest the Commonwealth Court of jurisdiction that already was secure.[8]

ongoing-violation interpretation is sufficient, in our view, to confirm the entitlement to judicial review.

Along these lines, we observe that the assessment of all of the relevant factors in determining justiciability (including immediacy and substantiality)—individually and collectively—entails discerning judgments. *Accord* 22A Am. Jur.2d *Declaratory Judgments* § 34 (2015) ("The difference between an abstract question and a controversy is necessarily one of degree[.]'").

8. A different dynamic would pertain had the Department commenced the administrative penalty proceedings before EPC initiated the declaratory judgment action in the Commonwealth Court. We do not resolve

Rather, EPC is entitled to clarification by that court concerning the statutes establishing the parameters of the company's penalty exposure, so that it may have the opportunity to organize its affairs accordingly.

We hold that the impact of the Department's threat of multi-million dollar assessments against EPC was sufficiently direct, immediate, and substantial to create a case or controversy justifying pre-enforcement judicial review via a declaratory judgment proceeding, and that exhaustion of administrative remedies relative to the issues of statutory interpretation that the company has presented was unnecessary.[9]

The order of the Commonwealth Court is reversed, and the matter is remanded for further proceedings consistent with this opinion.

Justice EAKIN did not participate in the decision of this case.

Justices TODD and STEVENS join the opinion.

Justice BAER files a dissenting opinion.

Justice BAER, dissenting.

In May 2012 Appellant, EQT Production Company (EPC), informed Appellee, the Department of Environmental Protection (DEP), of its discovery of water contaminated during hydraulic fracturing operations leaking from one of EPC's subsurface impoundments. Two years later, premised on its interpretation of the Clean Streams Law as imposing penalties for every day that contamination remained in the subsurface soil and passively entered ground or surface water, DEP offered EPC a proposed monetary settlement. EPC disputed DEP's interpretation of the Clean Streams Law as imposing daily penalties, resulting in what it viewed as excessive fines,

the question of justiciability presented in such a scenario but note only that we would be hesitant to foster races to the respective judicial and quasi-judicial tribunals.

9. To the extent that the previous decisions of the Commonwealth Court relied upon by the Department are inconsistent with our present ruling, *see supra* note 6, they are disapproved.

and on September 19, 2014, filed a complaint for declaratory judgment in the original jurisdiction of the Commonwealth Court to test DEP's legal theory. Two and a half weeks later, DEP filed a complaint with the Environmental Hearing Board (EHB) against EPC for civil penalties based on the violations outlined in the proposed settlement.

The Majority holds that this case provides a sufficient, actual controversy entitling EPC to pre-enforcement judicial review of an agency's interpretation of a statutory regime via a declaratory judgment proceeding, without the need to exhaust administrative remedies and despite the matter being in the exclusive jurisdiction of an administrative tribunal. The Majority's rationale for establishing this exception to the well-established requirements that courts should yield to administrative tribunals and litigants should exhaust administrative remedies is threefold: the agency's threat of multi-million dollar penalties, the lack of material facts in dispute, and the inability of EPC to initiate administrative review. I do not find this exception to be narrowly tailored, and perceive that the Majority has generally eroded the requirements for declaratory relief in a departure from established law. My reasoning follows.

First, I do not believe EPC has standing to petition the Commonwealth Court for declaratory relief because it is not aggrieved under the facts of this case. *See Office of the Governor v. Donahue,* 626 Pa. 437, 98 A.3d 1223, 1229 (2014) ("For standing to exist, the underlying controversy must be real and concrete, such that the party initiating the legal action has, in fact, been 'aggrieved.' "). Although DEP took the position that it could impose mounting daily penalties against EPC for its alleged violation of the Clean Streams Law, it has no authority to levy these penalties absent a hearing before the EHB, 35 P.S. § 691.605, and EHB's determination of the proper sanction, 35 P.S. § 7514. When such a hearing occurs, EPC will challenge DEP's statutory interpretation and the EHB will decide the issue. Until then, EPC's harm is speculative and has not matured into an actual case or controversy. EPC therefore does not have an interest suffi-

ciently substantial, direct, or immediate to confer standing. *See Donahue*, 98 A.3d at 1229 (explaining that a party is aggrieved for purposes of establishing standing when the party has a "substantial, direct and immediate interest" in the outcome of litigation).

The Majority apparently believes that because it is DEP's position that EPC is in continuing violation of the Clean Streams Law, and that it can therefore impose penalties for every day the violation continues, the harm is not speculative. I disagree. DEP's belief that the penalties are appropriate presents EPC with the sort of choice industry participants routinely assess when confronted with allegations that they have violated the law: whether to settle with the agency to mitigate their losses, or to wait for DEP to file a complaint before the EHB and challenge DEP's statutory interpretation before that tribunal. If the EHB finds there is statutory support for DEP's continuing violation theory, then EPC is liable for every day that its contaminants remain in the subsurface soil. *See* 35 P.S. § 691.602(d)' ("Each day of continued violation of any provision of this act, any rule or regulation of the department, any order of the department, or any condition of any permit issued pursuant to this act shall constitute a separate offense."). If, on the other hand, there is no statutory support for DEP's interpretation, there is no direct, immediate, or substantial hardship. DEP's untested belief that it can assess penalties against EPC for continuing violations of the Clean Streams Law is no more than one party's theory of the case, and is therefore insufficient to confer standing on EPC to seek declaratory relief at this juncture.

Second, "[t]he doctrine of exhaustion of administrative remedies requires a party to exhaust all adequate and available administrative remedies before the right of judicial review arises." *Empire Sanitary Landfill, Inc. v. Com., Dep't of Envtl. Res.*, 546 Pa. 315, 684 A.2d 1047, 1053 (1996). Courts should defer judicial review when presented with a question within an agency's specialization and where there is an administrative remedy to produce the desired result. *Id.* (citing

*National Solid Wastes Mgmt. v. Casey,* 135 Pa.Cmwlth. 134, 580 A.2d 893, 897 (1990), *aff'd,* 533 Pa. 97, 619 A.2d 1063 (1993)).

As an executive agency, it is DEP's responsibility to administer and enforce environmental laws. *See Tire Jockey Service, Inc. v. Dept. of Environmental Protection,* 591 Pa. 73, 915 A.2d 1165, 1185 (2007) (noting that DEP is the executive branch, and is assigned various duties to implement and enforce environmental statutes and regulations). However, this enforcement obligation includes the authority to assess civil penalties for violations of the Clean Streams Law only after a hearing before the EHB. 35 P.S. § 691.605. Absent such a hearing, DEP has no such authority.

The Majority concludes there is no available administrative remedy, a factor which it opines favors original jurisdiction judicial review. In this case, DEP has now filed a complaint with the EHB, bringing before that tribunal DEP's statutory interpretation of its authority to assess daily penalties against EPC. Divesting the EHB of its statutory jurisdiction to issue adjudications on DEP's orders and decisions, *see* 35 P.S. § 7514(a), simply because EPC filed its original jurisdiction declaratory judgment action first will "foster races to the respective judicial and quasi-judicial tribunals" as the Majority fears. Maj. Op. at 621–22, n. 8, 130 A.3d at 759, n. 8. Moreover, although the Majority is correct that until DEP filed its complaint with EHB, EPC had no venue within which to challenge DEP's asserted entitlement to penalties, it is equally accurate that until DEP sought administrative review it could never assess a fine against EPC. Similarly, the Majority is correct that if DEP's continuing violation theory is supported by the Clean Streams Law, then by delaying administrative review it could increase the fine. There is no reason to believe, however, that EHB will not understand this and reject a nonmeritorious result if appropriate. Under all established law, it should be afforded the opportunity to do so. I see no justification to bypass this administrative review.

Third and relatedly, the Declaratory Judgments Act expressly provides that declaratory relief is not available with

respect to any proceeding within the exclusive jurisdiction of a tribunal other than a court. 42 Pa.C.S. § 7541(c)(2). Because the EHB is an administrative tribunal with exclusive jurisdiction to issue adjudications on orders and decisions of DEP, declaratory relief should not be available to assess EPC's liability for violating the Clean Streams Law. *See Tire Jockey*, 915 A.2d at 1185 (describing the EHB as having the power and duty to hold hearings and issue adjudications on DEP's decisions); *Burnham Coal Co. v. PBS Coals, Inc.*, 65 Pa. Cmwlth. 86, 442 A.2d 3, 5 (1982) *aff'd*, 499 Pa. 59, 451 A.2d 443 (1982) ("... to the extent that the present declaratory judgment action by Burnham seeks a judicial declaration that 'Burnham has no liability for any violations of the Clean Streams Law being assessed against Burnham and PBS by [DEP],' the action clearly is placed outside the original declaratory judgment jurisdiction of this court by 42 Pa.C.S. § 7541(c)); 35 P.S. § 7514(a) (providing that the EHB's jurisdiction includes "the power and duty to hold hearings and issue adjudications ... on orders, permits, licenses, or decision of [DEP].").

Because EPC lacks standing, has not exhausted administrative remedies, and the matter is in the exclusive jurisdiction of the EHB, I do not believe EPC is entitled to declaratory relief. As noted above, the Majority's disagreement appears to be tied to the agency's threat of multi-million dollar penalties, the lack of material facts in dispute, and the inability of EPC to initiate administrative review. I do not find, however, that the facts of this case are unique or unusual sufficient to justify departure from the general requirements of declaratory relief described above.

Rather than representing an aberration, EPC's disagreement with the agency tasked with ensuring its compliance with relevant statutory obligations is the type of dispute for which administrative review is well suited. Agencies across the Commonwealth levy fines and penalties against those they are tasked to regulate, and the relevant administrative tribunal determines the legal validity of such assessments. By focusing on the mounting penalties for which EPC may or may not

be responsible, I am concerned that the Majority has created an exception to the requirement of exhaustion of administrative remedies that will swallow the rule. Respectfully, in doing so, the Majority demonstrates an implicit lack of confidence in the administrative tribunals of the Commonwealth. I do not share this lack of confidence. Rather, I trust that these administrative tribunals, which cultivate an expertise in their relative fields, will resolve the case before it correctly, rejecting fanciful or absurd theories that aggrieved parties may appeal to our courts in due course, ensuring a second (or third) review of any alleged error by the administrative tribunal. This is the undeniable logic of the administrative appeal process. Indeed, the administrative process is presently unfolding before the EHB against EPC, and in another case on the same legal issue, *DEP v. Sunoco Logistics Partners, LP and Sunoco Pipeline, LP,* EHB Dkt. No. 2014–020–CP–R. We should permit these proceedings to continue without judicial interference, and we should allow the EHB to apply its expertise on this question.

Moreover, our notions of case or controversy and justiciability restrain the judiciary from wading into matters that have not yet ripened into concrete disputes. *See Rendell v. Pennsylvania State Ethics Comm'n,* 603 Pa. 292, 983 A.2d 708, 717 (2009) ("Several discrete doctrines—including standing, ripeness, and mootness—have evolved to give body to the general notions of case or controversy and justiciability."). By establishing an entitlement to declaratory relief for EPC in the present circumstances premised on DEP's legal interpretation of a statute, mounting daily penalties, and EPC's inability to initiate the administrative proceeding, the Majority has degraded our justiciability restraints in matters not confined to the present scenario. Numerous examples spring to mind. Consider the district attorney who announces an intent to seek the death penalty against a criminal defendant premised on a legal interpretation of a statute, or a negligence plaintiff in a minor impact soft tissue case who indicates an intent to seek punitive damages. Declaratory relief would not be available to the defendants threatened with prosecution or the lawsuit.

Rather, we trust that a trial court will resolve any legal disputes that arise in the context of the criminal or negligence action initiated by the prosecutor or plaintiff. Following resolution, the issues would be reviewed on appeal.

In this case, DEP's legal interpretation of the Clean Streams Law is not independent of its allegations that EPC failed to abate the contamination caused by its water leakage. In this respect, there are factual matters for the EHB to resolve regarding EPC's continued contamination. Without the interference of a declaratory judgment action, the EHB will resolve, in due course, DEP's legal interpretation and apply it to the factual circumstances of EPC's contamination. The aggrieved party may, or may not appeal. Without an appeal, there will be nothing for the courts to decide.

Finally, I am not persuaded that the Majority's conclusion flows from *Donahue*. As the Commonwealth Court explained, the declaratory judgment action in *Donahue* challenged the Office of Open Records (OOR)'s declaration in litigation that it would interpret a provision of the Right to Know Law (RTKL), 65 P.S. § 67.901, in a manner detrimental to, *inter alia*, the Office of the Governor (OG). OOR, as the tribunal tasked with adjudicating requests under the RTKL, had the authority to impose its interpretation on OG. In contrast, DEP has no authority to impose its interpretation of the Clean Streams Law on EPC. Rather, it may interpret the statute and make a legal argument to the EHB, while the EHB has the authority to impose penalties.

Because I see nothing in the factual or legal circumstances of this case to warrant departure from our well-established rules of jurisprudence limiting a party's right to seek declaratory relief in the courts, I respectfully dissent.