IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Keystone ReLeaf LLC,                           :

                                        :

                Petitioner           :

                                          :

                v.                    :  No. 399 M.D. 2017

                                          :  Argued: February 7, 2018

Pennsylvania Department of Health,       :

Office of Medical Marijuana;             :

Prime Wellness of Pennsylvania, LLC;    :

Franklin Labs, LLC; Pennsylvania         :

Medical Solutions, LLC; Standard         :

Farms, LLC; Ilera Healthcare, LLC;     :

AES AES Compassionate Care, LLC;     :

Terrapin Investment Fund 1, LLC;       :

GTI Pennsylvania, LLC; Agrimed         :

Industries of PA, LLC; Purepenn, LLC;   :

Holistic Farms, LLC; Cresco           :

Yeltrah, LLC; Holistic Pharma, LLC;     :

Pharmacann Penn, LLC; SMPB          :

Retail, LLC; Terra Vida Holistic        :

Centers, LLC; Chamounix Ventures,     :

LLC; Bay, LLC; Restore Integrative     :

Wellness Center, LLC; Franklin        :

Bioscience-Penn, LLC; Mission         :

Pennsylvania II, LLC; Columbia Care   :

Pennsylvania, LLC; Justice Grown     :

Pennsylvania, LLC; Guadco,           :

LLC; Lebanon Wellness Center, LLC;    :

Organic Remedies, Inc.; KW Ventures    :

Holdings, LLC d/b/a Firefly          :

Dispensaries; Cansortium Pennsylvania,  :

LLC; PA Natural Medicine, LLC;       :

Keystone Center of Integrative Wellness,  :

LLC; Keystone Integrated Care, LLC;    :

The Healing Center, LLC; Maitri       :

Medicinials, LLC; Keystone Relief     :

Centers, LLC d/b/a Solevo Wellness;    :

Dubois Wellness Center, LLC,        :

                                          :

               Respondents     :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE ELLEN CEISLER, Judge

OPINION BY JUDGE WOJCIK                     FILED:  April 20, 2018

Before this Court are Respondents'[1] preliminary objections (POs) and

the Department's Application for Summary Relief[2] to Petitioner Keystone ReLeaf

---

[1] The named respondents are the Pennsylvania Department of Health, Office of Medical Marijuana (Department), and 39 applicants awarded grower/processor permits and/or dispensary permits (Permittees) (collectively, Respondents).  The following Respondents filed preliminary objections and briefs in support:  (1) the Department; (2) Agrimed Industries of PA, LLC; Standard Farms, LLC; Ilera Healthcare, LLC; Terrapin Investment Fund 1, LLC; GTI Pennsylvania, LLC; Pennsylvania Medical Solutions, LLC; Holistic Farms, LLC; Franklin Bioscience-Penn, LLC; Bay, LLC; SMPB Retail, LLC; Terra Vida Holistic Centers, LLC; Holistic Pharma, LLC; Mission Pennsylvania II, LLC; Justice Grown Pennsylvania, LLC; Lebanon Wellness Center, LLC; Organic Remedies, Inc.; KW Ventures Holdings, LLC d/b/a Firefly Dispensaries; Keystone Relief Centers, LLC d/b/a Solevo Wellness; The Healing Center, LLC; and Dubois Wellness Center, LLC (collectively, Agrimed); (3) Purepenn, LLC; (4) Franklin Labs, LLC; and (5) Chamounix Ventures, LLC.

The following Respondents joined Agrimed's POs and brief in support:  (1) AES Compassionate Care, LLC; Keystone Center of Integrative Wellness, LLC; and Guadco, LLC; (2) Pharmacann Penn, LLC; (3) Prime Wellness of Pennsylvania, LLC; (4) PA Natural Medicine, LLC; (5) Keystone Integrated Care, LLC; (6) Cresco Yeltrah, LLC; and (7) Cansortium Pennsylvania, LLC.

The Court also received POs and brief in support from Intervenor Patients-First Association of Companies (Intervenor).  Intervenor's POs and brief are identical to those filed by Respondent Chamounix Ventures, LLC.

For ease of discussion, this opinion refers to Respondents generally and does not distinguish arguments made by specific Respondents or Intervenor unless otherwise noted.

[2] Maitri Medicinals, LLC, joined the Department's Application for Summary Relief and brief in support.

LLC's Amended Petition for Review in the Nature of a Complaint in Equity Seeking a Declaratory Judgment and Injunctive Relief (Amended Petition) in this Court's original jurisdiction. Respondents assert that this Court lacks jurisdiction over the Amended Petition because Petitioner failed to exhaust administrative remedies and lacks standing to bring this original jurisdiction action, among other reasons. Upon review, we sustain Respondents' POs in the nature of demurrer and grant the Department's Application for Summary Relief on the basis that Petitioner failed to exhaust administrative remedies and dismiss the Amended Petition with prejudice.

## I. Background

The General Assembly enacted the Pennsylvania Medical Marijuana Act (Act),[3] which took effect on May 17, 2016, to establish a framework for the legalization of medical marijuana in the Commonwealth for certain medical conditions. The Act identified the Department as the Commonwealth agency responsible for administering the Act and authorized the Department to promulgate regulations, including temporary regulations, necessary to carry out the Act. Section 301 of the Act, 35 P.S. §10231.301; Section 1107 of the Act, 35 P.S. §10231.1107. In accord with this authority, the Department promulgated temporary regulations. *See* 28 Pa. Code §§1131.1-1191.33.

The Department established six medical marijuana regions. *See* Section 603(d) of the Act, 35 P.S. §10231.603(d); 28 Pa. Code §1141.24(a). Between February 20, 2017, and March 20, 2017, the Department accepted applications from entities interested in obtaining a limited number of medical marijuana grower/processor permits and/or dispensary permits. During the

---

[3] Act of April 17, 2017, P.L. 84, 35 P.S. §§10231.101-10231.2110.

3

application period, the Department received 457 applications – 177 for growers/processors and 280 for dispensaries. The criteria set forth in Section 603(a.1) of the Act, 35 P.S. §10231.603(a.1), and the factors listed in the temporary regulations, 28 Pa. Code §§1141.27-1141.34, govern the application review.

Petitioner submitted two dispensary permit applications in Region 2,[4] both of which were denied after failing to score higher than other applicants in the region. In addition, Petitioner attempted to submit a grower/processor permit application, also in Region 2, but failed to comply with the submission requirements, specifically failing to submit the application on a USB drive. The Department rejected the application as incomplete and did not score it.

Petitioner filed administrative appeals on all three unsuccessful permit applications with the Department on June 29, 2017, and July 7, 2017.[5] Notwithstanding the pendency of its appeals, Petitioner sought relief in this Court's original jurisdiction by filing a petition for review and an application for special relief, which it subsequently amended.[6]

In the Amended Petition, Petitioner challenges the Department's "permitting process" for (1) accepting, reviewing, and scoring medical marijuana

---

[4] Region 2 is "comprised of the counties of the Department's Northeast District, which includes Carbon, Lackawanna, Lehigh, Luzerne, Monroe, Northampton, Pike, Susquehanna, Wayne and Wyoming." 28 Pa. Code §1141.24(a)(2).

[5] More than 140 other unsuccessful applicants also filed administrative appeals challenging the denials of their applications.

[6] Petitioner originally filed its petition for review and application for special relief on September 8, 2017, naming the Department as the only respondent. The Department filed POs and an application for summary relief, asserting the same grounds now before this Court as well as failure to join indispensable parties, i.e., the Permittees. Petitioner sought leave to amend to join the Permittees as respondents, which this Court granted. Commonwealth Court Order, 10/26/17, at 1.

4

grower/processor and dispensary permit applications, and (2) issuing permits to selected applicants pursuant to the Act. The Amended Petition names the Department and the 39 applicants awarded grower/processor permits and/or dispensary permits (Permittees) as Respondents.

The Amended Petition raises five counts. In Count I, Petitioner asserts that the Department scored the applications inconsistently and arbitrarily and refuses to shed light on how it scored applications or awarded permits. By engaging in a secretive permitting process, the Department has deprived Petitioner and all applicants any fair and meaningful administrative review of their decisions in violation of due process. In Count II, Petitioner contends that the Department acted *ultra vires* in waiving certain statutory and regulatory requirements and strictly enforcing other requirements. In Count III, Petitioner avers that the Department's permitting process violates the requirements of the Right-to-Know Law (RTKL)[7] because the publicly-released applications contain unlawful redactions. In Count IV, Petitioner claims that, by failing to disclose the identities and qualifications of the scorers, the Department's permitting process may be infected by favoritism or bias in further violation of the due process rights of all applicants. In Count V, Petitioner asserts that the Department's permitting process should be invalidated in its entirety and the previously awarded permits rescinded because they were awarded pursuant to an unlawful process.

In support of its claim that the Department has scored the applications inconsistently and arbitrarily, Petitioner alleges the following. The Department has not provided objective criteria for scoring necessary for meaningful administrative challenge and review. For example, the scoring rubric made available to applicants

_____

[7] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

5

assigned 50 of 1000 points (or 5% of the available points) to a section called "Attachment E Personal Identification." This section required applicants to provide two separate, objective items: (1) a photo identification, and (2) a resume for each principal, employee, financial backer and operator. It is unclear how the Department scored this information. No applicant scored fifty (50) points and no applicant scored zero (0) points in this category. Moreover, applicants that submitted the same information received different scores. Amended Petition at ¶¶76-80.

Petitioner submitted two dispensary applications, which were identical except for dispensary location. Yet, the applications received different scores. Amended Petition at ¶¶96-105.

The Act requires an applicant for a dispensary application to demonstrate that it has at least $150,000 in capital deposited in a financial institution. Section 607(2)(vi) of the Act, 35 P.S. §10231.607(2)(vi). Petitioner demonstrated that it had $15,600,000 in capital, of which $7,287,500 was deposited with Wells Fargo. Despite vastly exceeding the statutory requirement, Petitioner's applications scored 61.80 and 60.60 of 75 points available on the "Capital Requirements" section. The applications were not scaled against each other because no applicant received a score of 100%. Amended Petition ¶¶101, 106-16.

The "Quality Control and Testing" section contained a "yes" or "no" question, with no request for a narrative or documentation in support, worth a total of 50 points. Inexplicably, published scores ranged from 5 to 41 points in this category.

In support of its claim that the Department waived certain statutory and regulatory requirements, Petitioner alleges that the Department waived the requirements for criminal background checks under Section 602(a)(4) of the Act,

35 P.S. §10231.602(a)(4), and 28 Pa. Code §1141.31, and tax clearance certificates under 28 Pa. Code §1141.27(c)(2). Yet, the Department strictly enforced submission requirements. Amended Petition at ¶¶136-37, 151-71.

Petitioner also avers that the Department did not fully release public records subject to the RTKL as mandated by Section 302(b) of the Act, 35 P.S. §10231.302(b), further exacerbating the lack of transparency in the permitting process and hindering meaningful administrative review. Amended Petition at ¶¶62-63. The Department has not scheduled hearings or provided post-award debriefings for Petitioner and other unsuccessful applicants. *See* 28 Pa. Code §1141.35(b).

Petitioner seeks declaratory and injunctive relief under the Declaratory Judgments Act.[8] Specifically, Petitioner requests this Court to: (1) declare the permitting process as arbitrary, capricious, unreasonable and *ultra vires*, and, therefore, invalid, unconstitutional, ineffective and without force of law; (2) declare that the Department has no authority to continue issuing permits under the current scheme; (3) preliminarily and permanently enjoin the Department from continuing the permitting process in violation of the Act; (4) preliminarily and permanently enjoin the Permittees from acting on the issued permits pending the outcome of this litigation; (5) rescind previously awarded permits; and (6) award costs and such other relief as this Court deems appropriate.

Respondents and Intervenor responded by filing POs. Respondents demur to all counts on the primary grounds that Petitioner failed to exhaust administrative remedies and lacks standing. In addition, some Respondents object because the Amended Petition is legally insufficient to support a claim for injunctive

---

[8] 42 Pa. C.S. §§7531-7541.

7

relief and is not sufficiently specific.[9]  The Department also filed an Application for Summary Relief seeking dismissal of the Amended Petition with prejudice because Petitioner failed to exhaust administrative remedies, lacks standing, and failed to establish the essential elements required for the issuance of an injunction.  After briefing[10] and oral argument, the POs and Application for Summary Relief are ready for disposition.[11]

## II. Discussion
### A. Failure to Exhaust Administrative Remedies
### 1. Contentions

First, Respondents contend that Petitioner failed to exhaust its administrative remedies before invoking this Court's original jurisdiction.  Petitioner

---

[9] One Respondent objected on the ground that Petitioner failed to properly join PurePenn, LLC, as an indispensable party in the Amended Petition.  However, this technical objection is moot because PurePenn, LLC, filed POs to the Amended Petition.

[10] This Court permitted Petitioner to file omnibus responses and briefs in opposition to all POs and the Application for Summary Relief.  Commonwealth Court Order, 12/6/17, at 1.

[11] "In ruling on preliminary objections, the courts must accept as true all well-pled facts that are material and all inferences reasonably deducible from the facts."  *Pennsylvania Independent Oil & Gas Association v. Department of Environmental Protection*, 135 A.3d 1118, 1123 (Pa. Cmwlth. 2015), *aff'd*, 161 A.3d 949 (Pa. 2017) (quoting *Guarrasi v. Scott*, 25 A.3d 394, 400 n.5 (Pa. Cmwlth. 2011)).  "However, we 'are not required to accept as true any unwarranted factual inferences, conclusions of law or expressions of opinion.'"  *Id.* (quoting *Guarrasi*, 25 A.3d at 400 n.5).  "To sustain preliminary objections, 'it must appear with certainty that the law will permit no recovery' and '[a]ny doubt must be resolved in favor of the non-moving party.'"  *Id.* (quoting *Guarrasi*, 25 A.3d at 400 n.5).

An application for summary relief may be granted if a party's right to judgment is clear and no material issues of fact are in dispute.  Pa. R.A.P. 1532(b); *Jubelirer v. Rendell*, 953 A.2d 514, 521 (Pa. 2008); *Eleven Eleven Pennsylvania, LLC v. Commonwealth*, 169 A.3d 141, 145 (Pa. Cmwlth. 2017).  When ruling on an application for summary relief, "we must view the evidence of record in the light most favorable to the non-moving party and enter judgment only if there is no genuine issue as to any material facts and the right to judgment is clear as a matter of law."  *Eleven Eleven*, 169 A.3d at 145 (quoting *Markham v. Wolf*, 147 A.3d 1259, 1270 (Pa. Cmwlth. 2016) (citation omitted)).

8

has a perfectly suited and adequate administrative remedy to address its complaints regarding the denial and scoring of its dispensary permit applications, and rejection of its grower/processor permit application and has availed itself of this remedy. Indeed, Petitioner's administrative appeals are presently pending before the Department's Secretary. The asserted grounds for the administrative appeals are the same grounds asserted in this original jurisdiction action. There is nothing novel or unique about Petitioner's claims in this regard, as more than 140 other unsuccessful applicants feel the same way, *i.e.*, that the Department got it wrong and the unsuccessful applicant should have been awarded the permit. Petitioner's claims amount to little more than a challenge of the Department's proper application of the Act and temporary regulations. Petitioner cannot establish any exception to the exhaustion requirement to invoke this Court's jurisdiction. Petitioner's "as-applied" constitutional challenge to the Department's interpretation and implementation of the Act and temporary regulations does not excuse its failure to exhaust the pending administrative remedies before the Department. Petitioner has not shown that the administrative review process is inadequate or that it will suffer any harm, let alone irreparable harm, during the administrative appeal process. Therefore, Respondents assert that this Court lacks jurisdiction over this action and Petitioner's Amended Petition should be dismissed with prejudice.

Petitioner responds that its claims are exempt from the exhaustion doctrine. Petitioner is not simply challenging its own unsuccessful applications, but rather the constitutionality and validity of the entire permitting process as applied to all permit applicants. Moreover, the administrative remedy is wholly inadequate. The Department cannot grant the requested relief in that it cannot declare its permitting process or review of that process unlawful or enjoin further

9

administration of the permitting process. Only this Court has the authority to grant the declaratory and injunctive relief requested. In addition, Petitioner asserts that the administrative appeal process does not afford unsuccessful applicants a meaningful opportunity to be heard in violation of due process. The Department has refused to explain or defend its scoring decisions or articulate a rationale for selecting winning applicants, asserting scoring is within its sole discretion. Applicants are severely disadvantaged by the secretive process and undisclosed criteria used by the Department in awarding permits. Because of the lack of transparency and hidden standards, any applicant appealing a permit denial is destined to fail. The Department has not afforded Petitioner the debriefing called for by its own regulations, *see* 28 Pa. Code §1141.35(b), and it has delayed the administrative hearings. Petitioner claims it will suffer irreparable harm if it is required to first exhaust administrative remedies before seeking relief in this Court. According to Petitioner, potentially less qualified applicants may have received permits and it will become increasingly difficult to remedy once such permittees enter into contracts with third parties. For these reasons, the exhaustion doctrine does not apply and this Court should overrule Respondents' POs in this regard.

### 2. Analysis

This Court's original jurisdiction extends to "all civil actions or proceedings . . . [a]gainst the Commonwealth government." Section 761 of the Judicial Code, 42 Pa. C.S. §761. However, a party must first exhaust its administrative remedies before invoking this Court's jurisdiction in challenging a final agency adjudication. *See Canonsburg General Hospital v. Department of Health*, 422 A.2d 141, 144 (Pa. 1980). The courts must refrain from exercising equity jurisdiction when there exists an adequate statutory remedy. *Arsenal Coal*

10

*Co. v. Department of Environmental Resources*, 477 A.2d 1333, 1338 (Pa. 1984); *Funk v. Commonwealth*, 71 A.3d 1097, 1101 (Pa. Cmwlth. 2012).

The doctrine of exhaustion of administrative remedies is intended to prevent the premature interruption of the administrative process, which would restrict the agency's opportunity to develop an adequate factual record, limit the agency in the exercise of its expertise, and impede the development of a cohesive body of law in that area. *See Empire Sanitary Landfill, Inc. v. Department of Environmental Resources*, 684 A.2d 1047, 1054 (Pa. 1996); *Shenango Valley Osteopathic Hospital v. Department of Health*, 451 A.2d 434, 438 (Pa. 1982); *Bucks County Services, Inc. v. Philadelphia Parking Authority*, 71 A.3d 379, 388 (Pa. Cmwlth. 2013). "The doctrine operates as a restraint on the exercise of a court's equitable powers and a recognition of the legislature's direction to comply with statutorily-prescribed remedies." *Empire Sanitary*, 684 A.2d at 1054.

Ordinarily, the failure to exhaust an administrative remedy "bars this Court from hearing claims for declaratory or injunctive relief with respect to that agency action." *Funk*, 71 A.3d at 1101. However, the exhaustion doctrine is neither inflexible nor absolute. *Feingold v. Bell of Pennsylvania*, 383 A.2d 791, 793 (Pa. 1977). There are narrow circumstances where exhaustion of remedies is not required. *See Commonwealth ex rel. Nicholas v. Pennsylvania Labor Relations Board*, 681 A.2d 157, 161 (Pa. 1996). Indeed, our Supreme Court has recognized three exceptions to the exhaustion of administrative remedies for constitutional attacks:

> The first exception is where the jurisdiction of an agency is challenged. The second exception is where the constitutionality of a statutory scheme or its validity is challenged. The third exception is where the legal or equitable remedies are unavailable or inadequate, or the

11

administrative agency is unable to provide the requested relief.

*Empire Sanitary*, 684 A.2d at 1054 (internal citations omitted). Because jurisdiction of the Department is not at issue, we address the second and third exceptions.

### a. Constitutionality of a Statutory Scheme

A party seeking to avoid exhaustion must demonstrate a "substantial question of constitutionality (and not a mere allegation) *and* the absence of an adequate statutory remedy." *Kowenhoven v. County of Allegheny*, 901 A.2d 1003, 1012 n.8 (Pa. 2006) (quoting *Borough of Green Tree v. Board of Property Assessments, Appeals and Review of Allegheny County*, 328 A.2d 819, 822 (Pa. 1974) (plurality)) (emphasis added); *accord Shenango*, 451 A.2d at 428; *Barsky v. Department of Public Welfare*, 464 A.2d 590, 593 (Pa. Cmwlth. 1983), *aff'd*, 475 A.2d 742 (Pa. 1984). The exception applies to facial challenges "made to the constitutionality of the statute or regulation *as a whole, and not merely to the application of the statute or regulation in a particular case.*" *Lehman v. Pennsylvania State Police*, 839 A.2d 265, 275 (Pa. 2003) (emphasis added); *accord Funk*, 71 A.3d at 1102.

"In a facial challenge, a party is not required to exhaust administrative remedies because 'the determination of the constitutionality of enabling legislation is not a function of the administrative agencies thus enabled.'" *Lehman*, 839 A.2d at 275 (quoting *Green Tree*, 328 A.2d at 825). "In contrast, substantial policy reasons require exhaustion of administrative remedies where the constitutional claims challenge only the *application of the statute.*" *Funk*, 71 A.3d at 1102 (emphasis added). As our Supreme Court explained:

12

> It is both sensible and efficient to permit administrative agencies to address *constitutional challenges to a statute's application*. First, the agency is given an opportunity to interpret the statute it is charged with administering to avoid an unconstitutional application. Second, agencies currently decide challenges to the constitutionality of regulations; administrative competency is not an issue. Third, agencies are better situated than the courts to develop agency-specific issues, and to find facts. Fourth, refusing to consider constitutional challenges to a statute's application allows litigants to circumvent the exhaustion of administrative remedies doctrine before seeking judicial review.

*Lehman*, 839 A.2d at 276 (emphasis added); *accord Funk*, 71 A.3d at 1102.

The exception encompasses pre-enforcement challenges. *Arsenal Coal*, 477 A.2d at 1339; *see Empire Sanitary*, 684 A.2d at 1054. "Where the effect of the challenged regulations upon the industry regulated is direct and immediate, the hardship thus presented suffices to establish the justiciability of the challenge in advance of enforcement." *Arsenal Coal*, 477 A.2d at 1339.

Relying on *Pennsylvania Independent Oil & Gas Association v. Department of Environmental Protection*, 135 A.3d 1118, 1123 (Pa. Cmwlth. 2015) (*PIOGA*), *aff'd*, 161 A.3d 949 (Pa. 2017), Petitioner maintains that this Court has original jurisdiction to resolve a facial challenge concerning the overall validity and constitutionality of an agency's as-applied permitting process as a whole. In *PIOGA*, a trade association filed a petition for review in the nature of a complaint for declaratory relief pursuant to the Declaratory Judgments Act challenging the systemic validity of the Department of Environmental Protection's (DEP) permitting process. *PIOGA*, 135 A.3d at 1120. The association sought a declaration from this Court that DEP was prohibited from applying and enforcing the requirements of Section 3215(c) of the act commonly known as the Pennsylvania Oil and Gas Act, 58 Pa. C.S. §3215(c), on well permit applicants because the Pennsylvania Supreme

13

Court enjoined the application and enforcement of that provision. *Id.  See Robinson Township v. Commonwealth*, 83 A.3d 901, 999 (Pa. 2013) (plurality).

In response, DEP filed POs on the basis that the association failed to exhaust administrative remedies. *PIOGA*, 135 A.3d at 1123.  Specifically, DEP argued that the association and its members have an adequate remedy at law – an administrative appeal to the Environmental Hearing Board (EHB) from the denial of a permit application. *Id.* at 1128.  DEP argued that the petition was merely an "as-applied challenge to the permitting process, not a facial challenge to a statute or regulation." *Id.* at 1129.

The association responded that it could not pursue a facial challenge to the underlying statutory support for the allegedly invalid permitting process because the Supreme Court already declared Section 3215(c) unconstitutional. *PIOGA*, 135 A.3d at 1129.  Further, the association argued that an appeal to the EHB was not adequate because the association was challenging the "process" as a whole, not just the denial of a particular permit or license, and it was seeking declaratory relief, which the EHB did not have authority to grant. *Id.*

We ultimately agreed with the association, opining:

Although DEP asserts that this is an as-applied challenge to the permitting process, it is apparent from the Petition for Review that [the association] *is challenging the facial validity of DEP's permitting process, to the extent based on Section 3215(c), as applied to every oil and gas permit application submitted to DEP*.  [The association] seeks an order from this Court declaring that the process presently used by DEP, which DEP acknowledges is the same as before the Supreme Court found Section 3215(c) unconstitutional in *Robinson Township*, is contrary to law, and enjoining DEP from continuing to enforce and apply those unconstitutional provisions.

14

*PIOGA*, 135 A.3d at 1130 (emphasis added). We concluded that the administrative remedy was not adequate because the EHB did not have jurisdiction to consider the association's pre-enforcement challenge or the authority to grant the relief requested. *Id.* (citing *Empire Sanitary*, 684 A.2d at 1054-55).

Here, although Petitioner is challenging the permitting process as a whole, a key distinction between this case and *PIOGA* is that, in *PIOGA*, the provision that DEP was applying and enforcing in its permitting process was already declared unconstitutional. We determined the association in *PIOGA* was in essence making a facial challenge to the implementation of a judicially-declared unconstitutional provision of the law. Such is not the case here. Petitioner is not challenging the constitutionality or validity of the Act or temporary regulations, nor is Petitioner seeking pre-enforcement review of the implementation of the Act or temporary regulations. *See Arsenal Coal; PIOGA*. Rather, the essence of Petitioner's claim is that the permitting process, *i.e.*, the manner in which the Department interpreted and applied the Act and temporary regulations, is invalid and unconstitutional. Petitioner presents a post-enforcement, "as-applied" constitutional challenge to the Department's application denials.

Our precedent has not recognized an exception to exhaustion for as-applied constitutional claims, but rather requires the disposition of "as-applied" challenges at the administrative level. *See Lehman*, 839 A.2d at 275; *PIOGA*, 135 A.3d at 1130. This "permits the agency to exercise its expertise and develop the factual record necessary to resolve the claim." *Lehman*, 839 A.2d at 275.

Because Petitioner challenges only the *application* of the law and not the law itself, the constitutional exception to the exhaustion of administrative remedies does not apply. Petitioner's claims regarding the application of the law

15

must be directed to the administrative agency for disposition in the first instance, unless the remedy is unavailable or inadequate. *See Empire Sanitary*, 684 A.2d at 1054. To conclude otherwise, would permit an end-run of the administrative appeal process that the doctrine of exhaustion of administrative remedies is designed to prevent. *See Lehman*, 839 A.2d at 276.

### b. Adequacy of Administrative Remedy

The Department's temporary regulations, the Administrative Agency Law[12] and the General Rules of Administrative Practice and Procedure (GRAPP)[13] establish remedies to challenge administrative actions taken by the Department, including permit denials. Pursuant to the Department's temporary regulations, the Department will provide written notice of the permit denial to an applicant. 28 Pa. Code §1141.35(a). The applicant may request a debriefing from the Department within 30 days from the date of the notice of denial. 28 Pa. Code §1141.35(b). Notably, it does not include a time limitation within which the Department must provide a debriefing. *See id.*

An applicant may appeal a notice of permit denial. 28 Pa. Code §1141.35(d). The appeal process is governed by the Administrative Agency Law and GRAPP. 1 Pa. Code §31.1(a); 28 Pa. Code §1141.35(d). Pursuant to Section 504 of the Administrative Agency Law:

> No adjudication of a Commonwealth agency shall be valid as to any party unless he *shall have been afforded reasonable notice of a hearing and an opportunity to be heard*. All testimony shall be stenographically recorded

---

[12] 2 Pa. C.S. §§501-508.

[13] 1 Pa. Code §§31.1-35.251.

16

and a full and complete record shall be kept of the proceedings.

2 Pa. C.S. §504 (emphasis added). "Commonwealth agencies shall not be bound by technical rules of evidence at agency hearings, and *all relevant evidence of reasonably probative value may be received. Reasonable examination and cross-examination shall be permitted*." 2 Pa. C.S. §505 (emphasis added). In addition, "[a]ll parties shall be afforded opportunity to submit briefs prior to adjudication by a Commonwealth agency." 2 Pa. C.S. §506. "All adjudications of a Commonwealth agency shall be in writing, shall contain findings and the reasons for the adjudication, and shall be served upon all parties or their counsel personally, or by mail." 2 Pa. C.S. §507.

Under GRAPP, Commonwealth agencies may issue subpoenas when a party makes an application for evidence that is relevant and material to the proceedings. Section 35.142(a) of GRAPP, 1 Pa. Code §35.142(a); *KC Equities v. Department of Public Welfare*, 95 A.3d 918, 933 (Pa. Cmwlth. 2014), *appeal denied*, 106 A.3d 727 (Pa. 2015). The application must specify the relevancy, materiality, and scope of the testimony sought. 1 Pa. Code §35.142(a); *KC Equities*, 95 A.3d at 933. GRAPP procedures comport with the general principles of due process because they "sufficiently provide notice, and permit review of any evidence an agency will introduce at hearing." *KC Equities*, 95 A.3d at 933. Upon review, the Department's temporary regulations, the Administrative Agency Law, and GRAPP provide unsuccessful applicants with an administrative remedy by which to seek redress for action that they believe violates the statutory scheme and/or their constitutional rights.

Notwithstanding, "the mere existence of a remedy does not dispose of the question of its adequacy; the administrative remedy must be 'adequate and

17

complete.'" *Feingold*, 383 A.2d at 794 (citing *Philadelphia Life Insurance Co. v. Commonwealth*, 190 A.2d 111, 116 (Pa. 1963)). "[A]n administrative remedy is inadequate if it either: (1) does not allow for adjudication of the issues raised . . . or (2) allows irreparable harm to occur to the plaintiffs during the pursuit of the statutory remedy." *Nicholas*, 681 A.2d at 161. A party claiming this exception must make a "clear showing that the remedy is inadequate." *Commonwealth v. Eisenberg*, 454 A.2d 513, 515 (Pa. 1982).

Relying on *Empire Sanitary*, Petitioner contends that the remedy is inadequate because the Department cannot provide the requested relief because only the courts have the power to grant declaratory judgment and injunctive relief, not administrative agencies. In *Empire Sanitary*, a landfill operator and trash hauler (petitioners) filed a pre-enforcement action seeking declaratory and injunctive relief, in which they challenged the Municipal Waste Planning, Recycling and Waste Reduction Act (Waste Act)[14] and provisions of the county's solid waste flow control ordinance as unconstitutional. The petitioners' available administrative remedy was to appeal the approval of the county plan to the EHB, which they did not do. *Empire Sanitary*, 684 A.2d at 1051.

Although the petitioners failed to exhaust available administrative remedies, the Supreme Court held that failure did not foreclose their challenge to the constitutionality of the Waste Act and the county's ordinance in court because the remedy was not adequate. *Empire Sanitary*, 684 A.2d at 1054. Only the courts of the Commonwealth have "the power to grant declarations and injunctive relief pursuant to the Declaratory Judgments Act . . . ." *Id.* at 1055. Because EHB lacked power to grant declaratory judgment and injunctive relief, the exhaustion of

---

[14] Act of July 28, 1988, P.L. 556, 53 P.S. §§4000.101-4000.1904.

18

administrative remedies was not required with regard to petitioners' facial constitutional challenge of the law. The Court held that "an action for declaratory judgment *with respect to the constitutionality* of the Ordinance or the [Waste] Act is appropriate in court since the available statutory remedy is inadequate." *Id.* The Supreme Court reasoned that allowing a declaratory judgment action to address a facial constitutional challenge to a law would not cause "the court to prejudge issues that are committed for initial resolution to an administrative forum" or establish "in advance the merits of any determination regarding a permit application." *Id.* at 1055.

Petitioner's reliance on *Empire Sanitary* is misplaced because, as discussed above, Petitioner has not presented a facial constitutional challenge to the Act or temporary regulations. Absent a facial constitutional challenge, there is no aspect of its claims that is not suitable for disposition by the administrative tribunal.

As previously discussed, "requiring 'as applied' challenges to be heard at the administrative level permits the agency to exercise its expertise and develop the factual record necessary to resolve the claim." *Lehman*, 839 A.2d at 275; *see St. Clair v. Pennsylvania Board of Probation and Parole*, 493 A.2d 146, 152 (Pa. Cmwlth. 1985). "This is particularly important where the ultimate decision rests upon factual determinations lying within the expertise of the agency or where agency interpretations of relevant statutes or regulations are desireable [sic]." *St. Clair*, 493 A.2d at 152. To the extent that the administrative agency has made a mistake, it should be presumed that, given the chance, it will recognize its errors and correct them. *Canonsburg*, 422 A.2d at 145; *St. Clair*, 493 A.2d at 152; *Chubb Group of Insurance Companies v. Department of Labor and Industry, Bureau of Worker's Compensation*, 655 A.2d 205, 206 (Pa. Cmwlth. 1995).

The issues at hand involve both the Department's interpretation and application of the Act and temporary regulations. The General Assembly designated the Department as the agency responsible for administering the Act. 35 P.S. §10231.301. The Department has expertise in administering the medical marijuana program, including the issuance of grower/processor permits and/or dispensary permits.

Petitioner's challenges regarding the criteria applied to scoring applications in the permitting process fall squarely within the Department's expertise. Petitioner is asking this Court to prejudge issues that are committed for initial resolution to an administrative forum. Because the issues involve the Department's expertise, such challenges must be brought before the Department before resorting to judicial review. *See Lehman*, 839 A.2d at 276; *see also Pennsylvania Independent Oil & Gas Association v. Department of Environmental Protection*, 146 A.3d 820, 830 (Pa. Cmwlth. 2016), *aff'd*, 161 A.3d 949 (Pa. 2017) (concerns over how an agency exercises its authority under the law with respect to permit applications are better left to the administrative agency process, followed by review in our appellate jurisdiction).

Although Petitioner filed administrative appeals from its denials, Petitioner has not meaningfully participated in the administrative appeal process. During the pendency of its administrative appeals, Petitioner filed its original jurisdiction action in this Court. Petitioner diverted course because it fears it will not get the answers that it seeks regarding the scoring or an opportunity to prove that the permitting process was invalid. However, having failed to go through the administrative appeal process, Petitioner's allegations regarding the process are speculative at best. The appropriate way to advance Petitioner's arguments in this

20

regard is to actually participate in the administrative appeal process, examine the Department's exhibits and cross-examine the witnesses who will testify about the permitting process, including the evaluation and scoring of permit applications. If the Department refuses to provide information, such matters are appropriate to raise to this Court on appeal. By not participating in the administrative appeal process in a meaningful way, there is no basis upon which this Court can conclude that the process is wholly inadequate. *See Canonsburg*, 422 A.2d at 145 ("courts should not presume futility in the administrative appeal").

Finally, Petitioner fails to demonstrate that the administrative appeal process "allows irreparable harm to occur during the administrative process." *Nicholas*, 681 A.2d at 161. Petitioner admits that it "cannot, at this early stage of this litigation, assert more specific harm because the [Department] arbitrarily and unreasonably refuses to provide the information necessary to definitely determine whether that harm exists by way of administrative review." Petitioner's Omnibus Brief in Opposition to the Department's Application for Summary Relief, at 28. Petitioner's admission underscores the need to develop a record at the administrative level. There are material factual dynamics involved in evaluating the criteria for scoring permit applications that must be developed in an administrative forum for this Court to determine whether the permitting process violates the Act or temporary regulations. Without a proper record, judicial review would constitute a "premature interruption of the administrative process." *Canonsburg*, 422 A.2d at 144.

As for Petitioner's claim that it is harmed by the award of permits to *potentially* unqualified or *potentially* less qualified applicants, such harm is speculative and not irreparable. If Petitioner's administrative appeal succeeds, or if a permittee is deemed unqualified, the Department is authorized to grant and revoke

21

permits. Section 603 of the Act, 35 P.S. §10231.603; Section 613 of the Act, 35 P.S. §10231.613. At this juncture, we conclude that the administrative review process is not inadequate.[15]

## III. Conclusion

In sum, Petitioner has not made a clear showing that an exception to the doctrine of administrative remedies applies. Petitioner has not presented a facial constitutional challenge to the Act or temporary regulations nor shown how the administrative remedy before the Department is inadequate. Our review of the Department's administrative review process satisfies us that it offers unsuccessful applicants an adequate remedy to challenge their permit denials and the permitting process. Because Petitioner's administrative appeal is ongoing, a judgment here would be inappropriate. *See Barsky*, 464 A.2d at 594.

For these reasons, we sustain Respondents' POs relating to Petitioner's failure to exhaust administrative remedies, grant the Department's Application for Summary Relief on the same basis, and dismiss the Amended Petition with prejudice.[16]

_____
MICHAEL H. WOJCIK, Judge

_____

[15] If the administrative review fails to provide meaningful administrative review or relief, such is a matter to be raised on appeal.

[16] In light of this determination, we need not address the remaining POs. Notwithstanding, we note that Petitioner has raised some troubling allegations regarding the permitting process, which this Court takes very seriously. Although Petitioner has failed to exhaust its administrative remedies, we may have the opportunity to address these issues in the near future in our appellate role.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Keystone ReLeaf LLC,     :
            :
     Petitioner   :
            :
     v.       : No. 399 M.D. 2017
            :
Pennsylvania Department of Health, :
Office of Medical Marijuana;   :
Prime Wellness of Pennsylvania, LLC; :
Franklin Labs, LLC; Pennsylvania  :
Medical Solutions, LLC; Standard  :
Farms, LLC; Ilera Healthcare, LLC; :
AES AES Compassionate Care, LLC; :
Terrapin Investment Fund 1, LLC;  :
GTI Pennsylvania, LLC; Agrimed  :
Industries of PA, LLC; Purepenn, LLC; :
Holistic Farms, LLC; Cresco   :
Yeltrah, LLC; Holistic Pharma, LLC; :
Pharmacann Penn, LLC; SMPB  :
Retail, LLC; Terra Vida Holistic  :
Centers, LLC; Chamounix Ventures, :
LLC; Bay, LLC; Restore Integrative :
Wellness Center, LLC; Franklin  :
Bioscience-Penn, LLC; Mission  :
Pennsylvania II, LLC; Columbia Care :
Pennsylvania, LLC; Justice Grown  :
Pennsylvania, LLC; Guadco,   :
LLC; Lebanon Wellness Center, LLC; :
Organic Remedies, Inc.; KW Ventures :
Holdings, LLC d/b/a Firefly   :
Dispensaries; Cansortium Pennsylvania, :
LLC; PA Natural Medicine, LLC;  :
Keystone Center of Integrative Wellness, :
LLC; Keystone Integrated Care, LLC; :
The Healing Center, LLC; Maitri  :
Medicinials, LLC; Keystone Relief  :
Centers, LLC d/b/a Solevo Wellness; :
Dubois Wellness Center, LLC,  :
            :
     Respondents  :

# **O R D E R**

AND NOW, this 20th day of April, 2018, Respondents' preliminary objections in the nature of demurrer on the basis that Petitioner has failed to exhaust administrative remedies are SUSTAINED; Respondent Pennsylvania Department of Health, Office of Medical Marijuana's Application for Summary Relief is GRANTED on the same basis; and Petitioner's Amended Petition is hereby DISMISSED WITH PREJUDICE.

_____
MICHAEL H. WOJCIK, Judge