IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Franklin Towne Charter High School | : | **CASES CONSOLIDATED** |
| | : | |
| v. | : | No. 1173 C.D. 2024 |
| | : | |
| The School District of Philadelphia and The Board of Education of the School District of Philadelphia, Appellants | : | |
| | : | |
| Franklin Towne Charter High School, Appellant | : | |
| | : | |
| v. | : | No. 1210 C.D. 2024 |
| | : | |
| The School District of Philadelphia and The Board of Education of the School District of Philadelphia | : | Argued: February 4, 2026 |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge
            HONORABLE STACY WALLACE, Judge
            HONORABLE MATTHEW S. WOLF, Judge
            HONORABLE STELLA M. TSAI, Judge

OPINION
BY JUDGE McCULLOUGH                FILED: April 30, 2026

In these consolidated cross-appeals, the School District of Philadelphia and the Board of Education (BOE) of the School District of Philadelphia (collectively, the School District) appeal from the order entered in the Philadelphia County Court of Common Pleas (trial court) on August 27, 2024, granting in part and denying in part the motion filed by Franklin Towne Charter High School (Franklin Towne) seeking injunctive relief in connection with charter revocation proceedings the School District

initiated against Franklin Towne pursuant to 24 P.S. § 17-1729-A of the Charter School Law (CSL).[1]  The trial court's order directed the School District to replace Rudolph Garcia, Esq., as its designated hearing officer in the proceedings, and denied Franklin Towne's constitutional challenges independent of its request for equitable relief.

On appeal, the School District chiefly contends that Franklin Towne was not entitled to seek judicial relief because it has failed to exhaust its available statutory remedies under the CSL.  Because we agree with the School District on this dispositive issue, we vacate the trial court's order and remand with instructions for it to dismiss Franklin Towne's action.

## Background

The relevant facts and procedural history of this case are as follows. Franklin Towne is located in northeast Philadelphia and it has operated a public charter high school since 2000, with a population of 1,300 students.  On August 17, 2023, the BOE issued a notice of revocation of Franklin Towne's operating charter and approved a resolution to commence proceedings against it pursuant to Section 1729-A of the CSL.[2]  The BOE took these measures because of allegations that Franklin Towne was engaging in discriminatory lottery practices in violation of the CSL, and it appointed Rudolph Garcia, Esq., as the hearing officer.

On October 16, 2023, Franklin Towne filed the underlying complaint seeking preliminary injunctive relief,[3] requesting Mr. Garcia's recusal.  According to

---

[1] Act of March 10, 1949, P.L. 30, *as amended*, added by Section 1 of the Act of June 19, 1997, P.L. 225, 24 P.S. §§ 17-1701-A-17-1751-A.

[2] Section 1729-A of the CSL authorizes local board of school directors to revoke a charter if one or more of six enumerated criteria are met.  24 P.S. § 17-1729-A(a)(1)-(6).

[3] A party seeking a preliminary injunction must show:
**(Footnote continued on next page…)**

Franklin Towne, the BOE's appointment of Mr. Garcia to preside over the charter revocation proceedings created an appearance of bias because a recent investigative report examining the BOE's charter school practices concluded that he had demonstrated a bias in favor of the BOE and against charter schools, Black-led charter schools in particular. (Reproduced Record (R.R.) at 21a.) Franklin Towne also asserted that the due process protections afforded by the Federal and State Constitutions[4] require charter revocation proceedings to be conducted by an unbiased, impartial hearing officer, and that Mr. Garcia's appointment does not meet this requirement. (R.R. at 56a-57a.) Franklin Towne additionally maintained that "Section 1729-A(c) of the [CSL] expressly permits and encourages [the] unconstitutional

---

> [f]irst, . . . that an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages. Second, the party must show that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings. Third, the party must show that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct. Fourth, the party seeking an injunction must show that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits. Fifth, the party must show that the injunction it seeks is reasonably suited to abate the offending activity. Sixth and finally, the party seeking an injunction must show that a preliminary injunction will not adversely affect the public interest.

*Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.*, 828 A.2d 995, 1001 (Pa. 2003).

[4] U.S. Const. amend. XIV; Pa. Const. art. 1, § 9.

3

commingling of prosecutorial and adjudicative functions" and must be declared unconstitutional on its face. (R.R. at 57a) (emphasis omitted).[5]

In response, the School District argued, *inter alia*, that Franklin Towne's motion should be denied for lack of jurisdiction for its failure to exhaust administrative remedies, as the CSL provides the mandatory and exclusive review process in charter revocation matters. (R.R. at 873a.) The School District maintained that, because involvement by the courts of common pleas is not implicated by this statutorily prescribed process, the trial court lacked jurisdiction to hear the matter.

The trial court held several hearings on Franklin Towne's motion from January of 2024, through August of that year. During the initial hearing, the School District contended the trial court lacked jurisdiction for Franklin Towne's failure to exhaust administrative remedies, namely the statutory process of having the matter heard by the BOE, followed by appeal *de novo* to the Charter School Appeal Board (CAB), and then to this Court, if necessary. (R.R. at 936a-937a.)

Franklin Towne countered that pursuing relief before the BOE and CAB was not an adequate and complete remedy because it would not "get[] a fair shake" during those proceedings, and the trial court was the only jurisdiction that could rule on its constitutional claims. (R.R. at 940a.) The trial court determined, without explanation, that it had jurisdiction to hear the case and held four additional hearings on the matter. (R.R. at 941a.)

On August 27, 2024, the trial court entered its order enjoining the School District from naming Mr. Garcia as its designated hearing officer or otherwise

---

[5] Section 1729-A(c) of the CSL provides in relevant part: "The local board of school directors shall conduct such hearing, present evidence in support of the grounds for revocation or nonrenewal stated in its notice and give the charter school reasonable opportunity to offer testimony before taking final action." 24 P.S. § 17-1729-A(c).

4

participating in the proceedings against Franklin Towne; overruling the School District's objections asserting lack of jurisdiction for failure to exhaust administrative remedies; and denying the constitutional issues Franklin Towne raised independent of its request for equitable relief. In the trial court's opinion accompanying the order, it addressed the jurisdictional issue by stating only: "After presentation of oral arguments early within the proceedings, this court verbally announced its initial finding that this court had possessed the jurisdiction and authority to hear the subject injunctive requests and related due process complaints." (Trial Ct. Op., 8/27/24, at 16.) These consolidated appeals followed.[6]

## Issues

The School District argues as a threshold matter that the trial court erred in issuing an injunction because the CSL affords exclusive jurisdiction over revocation proceedings to the BOE and, if an appeal is necessary, to the CAB and then to this Court. On the merits of the trial court's decision, the School District maintains that Franklin Towne failed to establish the elements necessary to obtain a preliminary injunction, in that Franklin Towne failed to demonstrate a clear right to relief or that it would suffer immediate, irreparable harm in the absence of an injunction.

Franklin Towne counters with respect to the jurisdictional issue that the administrative process provided under the CSL is not an adequate alternative remedy, because if Franklin Towne were required to follow that procedure, its claims of perceived bias by Mr. Garcia would never be fairly vetted and the process would be futile. In its cross-appeal, Franklin Towne raises one issue arguing that Section 1729-A is unconstitutional on its face and as-applied because it authorizes the School District to illegally co-mingle its prosecutorial and adjudicative functions in the context of

_____

[6] The School District also filed an application for King's Bench consideration to the Pennsylvania Supreme Court, which that Court denied on April 7, 2025.

5

charter revocation proceedings. According to Franklin Towne, permitting the School District to co-mingle these separate functions would violate its due process rights if the proceedings are directed to move forward.

## Analysis

We first address the School District's contention that the trial court lacked jurisdiction over this matter because Franklin Towne failed to exhaust its administrative remedies under the CSL before seeking judicial relief in the trial court. (School District's Br., at 29-39.) The School District maintains that Pennsylvania law is clear that any alleged flaws in the prescribed statutory administrative proceedings must be addressed by the BOE, followed by the CAB, and ultimately by this Court — not by the trial court, which has no legislative authority to participate in this process. *Id.* at 30-31.[7]

"It is well settled that when an adequate administrative remedy exists, this Court lacks jurisdiction to entertain a suit in either law or equity." *Pennsylvania Independent Oil & Gas Association v. Department of Environmental Protection*, 135 A.3d 1118, 1129 (Pa. Cmwlth. 2015). "The doctrine of exhaustion of administrative remedies requires that a person challenging an administrative decision must first exhaust all adequate and available administrative remedies before seeking relief from the courts." *McNew v. East Marlborough Township*, 295 A.3d 1, 10 (Pa. Cmwlth. 2023). "The doctrine of exhaustion of administrative remedies is intended to prevent the premature interruption of the administrative process, which would restrict the agency's opportunity to develop an adequate factual record, limit the agency in the exercise of its expertise, and impede the development of a cohesive body of law in that

---

[7] Because the issues presented herein require interpretation of the CSL, "they are issues of law, over which our standard of review is *de novo* and our scope of review is plenary." *Discovery Charter School v. School District of Philadelphia*, 166 A.3d 304, 316 (Pa. 2017).

6

area." *Keystone ReLeaf LLC v. Pennsylvania Department of Health*, 186 A.3d 505, 512 (Pa. Cmwlth. 2018) (*en banc*). "The doctrine operates as a restraint on the exercise of a court's equitable powers and a recognition of the legislature's direction to comply with statutorily prescribed remedies." *Id.* "Thus, where the legislature has provided an administrative procedure to challenge and obtain relief from an agency's action, failure to exhaust that remedy bars this Court from hearing claims for declaratory or injunctive relief with respect to that agency action." *Propel Charter Schools v. Department of Education*, 243 A.3d 322, 327 (Pa. Cmwlth. 2020).

However, the rule requiring exhaustion of administrative remedies is not absolute, as there are narrow circumstances where exhaustion of remedies is not required. *Keystone ReLeaf LLC*, 186 A.3d at 513. Our Supreme Court has recognized three exceptions to the exhaustion of administrative remedies for constitutional challenges, under circumstances where: (1) the jurisdiction of an agency is contested; (2) the constitutionality of a statutory scheme or its validity is challenged; (3) the legal or equitable remedies are unavailable or inadequate, or the administrative agency is unable to provide the requested relief. *Id.* (citing *Empire Sanitary Landfill, Inc. v. Department of Environmental Resources*, 684 A.2d 1047, 1054 (Pa. 1996)).

Here, the third exception is at issue, as Franklin Towne argues the administrative review process available under the CSL is inadequate and violative of its due process rights. According to Franklin Towne, its claim of perceived bias relating to Mr. Garcia's appointment as hearing officer must be heard before an impartial decision maker, which cannot occur with his participation. (Franklin Towne's Br., at 3, 43.)

The School District counters that Franklin Towne has an adequate statutory remedy prescribed by the CSL, which governs the charter school revocation

process and provides the appropriate vehicle for obtaining relief for parties subject to revocation proceedings. (School District's Br., at 32.) The School District maintains that Franklin Towne cannot skirt its statutory obligation to complete this process before seeking court intervention by raising due process challenges to the procedure itself.

We first observe with respect to Franklin Towne's invocation of the inadequate administrative remedies exception that the available remedy must be adequate and complete, and the administrative process may be bypassed if it "would be of little, if any, utility[.]" *Donahue v. PA Department of Human Services*, 347 A.3d 96, 102 (Pa. Cmwlth. 2025). A party claiming this exception must make a clear showing the remedy is inadequate because it either "(1) does not allow for adjudication of the issues raised[;] or (2) allows irreparable harm to occur to the petitioners during the pursuit of the statutory remedy." *Id.*

Turning to the remedies available under the CSL, our Supreme Court has explained that in enacting this legislation, the General Assembly has provided "an exhaustive statutory framework governing charter authorization, renewal, and revocation." *Discovery Charter School*, 166 A.3d at 318. Section 1729-A of the CSL governs the charter revocation process and provides, in pertinent part, that "the local board of school directors may choose to revoke or not to renew the charter," based on certain enumerated factors. 24 P.S. § 17-1729-A(a). When a school board considers revoking a charter, it is required to provide the charter school with notice of the grounds for taking such action, and to conduct a public hearing at which the board and the charter school may present evidence before the board makes a final decision. 24 P.S. § 17-1729-A(c). In the event the school board determines that charter revocation or nonrenewal is appropriate, Section 1729-A(d) of CSL sets forth the following procedure for appellate review:

(d) . . . the charter school may appeal the decision of the local board of school directors to revoke or not renew the charter **to the [CAB]. The [CAB] shall have the exclusive review of a decision** not to renew or **revoke a charter**. The [CAB] shall review the record and shall have the discretion to supplement the record if the supplemental information was previously unavailable. The [CAB] may consider the charter school plan, annual reports, student performance and employe and community support for the charter school in addition to the record. The [CAB] shall give due consideration to the findings of the local board of directors and specifically articulate its reasons for agreeing or disagreeing with those findings in its written decision.

24 P.S. § 17-1729-A(d) (emphasis added). If the CAB upholds a charter revocation or non-renewal, the charter school may seek further review in this Court, as "all decisions of the [CAB] **shall** be subject to **appellate review by the Commonwealth Court**." 24 P.S. § 17-1717-A(h) (emphasis added); *see also Discovery Charter School*, 166 A.3d at 317. Thus, the provisions of the CSL provide clear roles for the BOE, CAB, and for this Court in the charter revocation process, but provide no role whatsoever for the courts of common pleas.

Here, Franklin Towne sought immediate judicial review in the trial court upon learning of the revocation proceedings, instead of following the carefully delineated multi-step procedure mandated by the legislature. We disagree with Frankin Towne's position that the avenue of recourse available under the CSL was inadequate, and in making this determination, we find our Supreme Court's analysis in *Hawbaker, Inc. v. Department of Transportation*, 304 A.3d 1067 (Pa. 2023), instructive. In *Hawbaker*, the Pennsylvania Department of Transportation (PennDOT) issued a notice of immediate suspension to a highway construction contractor after criminal charges were filed against him and scheduled an administrative hearing on the matter. In response, the contractor filed a petition for review in this Court, requesting injunctive

9

and declarative relief, contending that PennDOT's suspension procedure violated his due process rights because it allowed an immediate suspension without first conducting an investigation and hearing. *Id.* at 1073. This Court issued a preliminary injunction based on its determination that the contactor had raised substantial legal questions including "significant due process concerns relative to PennDOT's administrative process and regulations[.]" *Id.* at 1079.

PennDOT appealed the decision to our Supreme Court, arguing that the Commonwealth Court erred by exercising equitable jurisdiction because the contractor failed to exhaust available and adequate administrative remedies. Our Supreme Court agreed and reversed this Court, reiterating the fundamental principle "that equity will not intervene where there is available an adequate statutorily prescribed remedy at law[.]" *Id.* at 1081. The Court additionally emphasized, "our precedent is clear that **raising a substantial constitutional or validity challenge alone is not enough to forgo application of the exhaustion doctrine and that, in asserting such challenges, a litigant must also demonstrate the absence or inadequacy of an administrative remedy**." *Id.* at 1083 (emphasis added). In rejecting the contractor's claim that PennDOT's administrative proceeding would be "futile" or "pointless and result in a foregone conclusion of debarment," the Court determined that, "[p]ut simply, all of Hawbaker's arguments are grounded upon facts that have yet to be borne out." *Id.* at 1088.

This Court's decision in *Village Charter School v. Chester Upland School District*, 813 A.2d 20, 27 (Pa. Cmwlth. 2002), is also instructive. In that case, the school district was required to provide funding for the charter school's operation under the CSL, and in June of 2002, the school district sent the school a check for only half of its monthly allocation. The charter school filed a petition for review in this Court

10

seeking injunctive and mandamus relief, requesting entry of an order enjoining the school district from providing inadequate funds and directing it to provide the allocated funding. *Id.* at 23. The school district filed preliminary objections to the petition, contending that the charter school failed to exhaust its administrative remedies under the CSL, which prescribes that where a school district fails to provide allocated funds to a charter school, the Secretary of the Department of Education must deduct the estimated amount of the unpaid funding from state education subsidies for the school districts and remit it to the school. *Id.* at 27. The charter school countered that judicial intervention was necessary because the remedy provided by the CSL was inadequate, as the Secretary failed to immediately withhold the unpaid funds from the state education subsidies and send them to the school. This Court disagreed, and dismissed the charter school's action, holding that "[b]ecause [the charter school] failed to exhaust the available administrative remedies, this Court lacks jurisdiction to entertain an action either in law or in equity." *Id.*

Similarly here, Franklin Towne never pursued the statutorily prescribed process for charter revocation before the BOE, then appealing if necessary to the CAB, and ultimately to this Court, in the event of an adverse administrative ruling. However, in enacting the relevant portions of the CSL, our General Assembly conferred **exclusive jurisdiction** over charter revocation matters to these administrative bodies, and only upon exhaustion of that process, to this Court. *See* 24 P.S. § 17-1717-A(a), (c), (d), (h). Despite this clear procedure for review prescribed by our legislature as the exclusive means for obtaining relief, Franklin Towne has avoided commencement of charter revocation proceedings by filing an equitable action in the trial court, a forum which lacks jurisdiction to hear the matter under the plain terms of the CSL.

11

While Franklin Towne attributes its actions to the purported inadequacy of the statutorily mandated method for challenging charter revocation, our Supreme Court in *Hawbaker* made clear that a party cannot circumvent the administrative process by raising due process claims concerning the process itself, even if its due process concerns are significant. *See Hawbaker*, 304 A.3d at 1083. The party must instead participate in and complete the administrative process before it can seek judicial review of an adverse decision. Franklin Towne's assertion that its participation in this process would be futile and result in its claims of bias never being fairly considered is, as was the argument of futility of the administrative process in *Hawbaker*, "grounded upon facts that have yet to be borne out." *Id.* at 1088.

Accordingly, based on the foregoing, consistent with *Hawbaker* and *Village Charter School*, we conclude that the administrative process available to Franklin Towne under the CSL, which could culminate in appellate review of the decision by this Court, "is not futile and will ensure that [Franklin Towne's] rights will be protected." *Hawbaker*, 304 A.3d at 1090. The School District is therefore entitled to relief on its claim that the trial court lacked jurisdiction to issue preliminary injunctive relief because Franklin Towne has failed to exhaust its administrative remedies under the CSL, which provides no role for the courts of common pleas in the charter revocation process. We therefore vacate the trial court's order and remand with instructions for it to dismiss Franklin Towne's action.[8]

PATRICIA A. McCULLOUGH, Judge

---

[8] Given our disposition, we need not reach the remaining issues raised by the parties on appeal and cross-appeal.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Franklin Towne Charter High School | : | **CASES CONSOLIDATED** |
| | : | |
| v. | : | No. 1173 C.D. 2024 |
| | : | |
| The School District of Philadelphia and The Board of Education of the School District of Philadelphia, Appellants | : : : : | |
| | : | |
| Franklin Towne Charter High School, Appellant | : : | |
| | : | |
| v. | : | No. 1210 C.D. 2024 |
| | : | |
| The School District of Philadelphia and The Board of Education of the School District of Philadelphia | : : : | |

## ***ORDER***

AND NOW, this 30th day of April, 2026, the August 27, 2024 order entered in the Philadelphia County Court of Common Pleas (trial court) is hereby VACATED. Case remanded with instructions for the trial court to dismiss Franklin Towne Charter High School's action. Jurisdiction relinquished.

 

 

PATRICIA A. McCULLOUGH, Judge