# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Repsol Oil & Gas USA, LLC,    :
       :
       Petitioner   :
       :
      v.      :  No. 613 M.D. 2022
       :
Pennsylvania Public Utility   :
Commission,       :
       :
      Respondent  :  Argued: May 8, 2024

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE LORI A. DUMAS, Judge
          HONORABLE STACY WALLACE, Judge
          HONORABLE MATTHEW S. WOLF, Judge

**<u>OPINION NOT REPORTED</u>**

MEMORANDUM OPINION BY
JUDGE WOLF               FILED: July 23, 2024

      The Unconventional Gas Well Impact Fee Act of 2012 (Act 13 or Act), 58 Pa.C.S. §§ 2301-2318, creates an administrative process for levying impact fees on extraction of natural gas from unconventional wells. In our original jurisdiction, Petitioner Repsol Oil & Gas USA, LLC (Repsol) asks the Court to declare who must pay those fees. The Pennsylvania Public Utility Commission (Commission) has sent Repsol invoices demanding payment of the Act 13 fees due in 2022 for 72 unconventional wells Repsol recently acquired. Repsol argues that its predecessors in interest—Rockdale Marcellus Holdings, LLC and Rockdale Marcellus, LLC (collectively, Rockdale)—are solely responsible to pay the fees. Now before the

Court are the Commission's preliminary objections to Repsol's second amended petition for review requesting declaratory and injunctive relief (Petition) and Repsol's application for summary relief. Because we conclude that Repsol has failed to exhaust an available administrative remedy before the Commission, we sustain in part the Commission's preliminary objections, dismiss the Petition, and dismiss as moot the remaining preliminary objections and Repsol's application for summary relief.

## I. BACKGROUND

### A. Statutory Framework

The Petition challenges the Commission's application of Chapter 23 of Act 13, which the General Assembly enacted in 2012. Section 2302 of the Act allows municipalities to impose a fee on all unconventional gas wells within their borders. 58 Pa.C.S. § 2302(a), (a.1), (a.4). The Commission calculates the amount of the fee and collects the fee. *Id*. §§ 2302(b)-(c), 2307(a). The fee imposed under these provisions has two components. "Impact fees" are calculated "on an annual flat, per-well basis . . . using the average annual price of natural gas" during the relevant calendar year, and are intended to offset the environmental impacts of unconventional gas production. *Snyder Bros., Inc. v. Pa. Pub. Util. Comm'n*, 198 A.3d 1056, 1059, 1075 (Pa. 2018); *see also* 58 Pa.C.S. § 2302(b)-(c) (establishing method of calculating impact fee). "Spud fees" are a small per-well fee authorized by Section 2303(c) of the Act to fund the Commission's administration of the fee program. 58 Pa. C.S. § 2303(c). This matter involves a dispute over who is responsible to pay impact and spud fees.

The fee under the Act "is imposed on every producer" of an unconventional gas well. 58 Pa.C.S. § 2302(b). A *producer* is

2

> [a] person or its subsidiary, affiliate or holding company *that holds a permit or other authorization* to engage in the business of severing natural gas for sale, profit or commercial use from an unconventional gas well in this Commonwealth . . . .

58 Pa.C.S. § 2301 (definitions) (emphasis added). On April 1 of each year, each producer must perform two actions: (1) pay the fee imposed, and (2) file a report with the Commission "for the previous calendar year" counting that producer's wells in each municipality that has imposed a fee. *Id.* § 2303(b).

The Commission has, through adjudication, clarification, and proposed rules, stated that it interprets Section 2302 as requiring that "when a producer for a particular well changes, the producer responsible for filing an Act 13 report on April 1 is responsible for paying the impact [and spud] fee [due at that same time]." *Pa. Pub. Util. Comm'n v. Xtreme Energy Corp.* (Commission, Docket No. C-2017-25999145, filed May 7, 2019), slip op. at 20, 2019 WL 2250766, Conclusion of Law No. 10 (citing *Act 13 of 2012—Implementation of Unconventional Gas Well Impact Fee Act, Clarification Order Regarding Chapter 23*, (Commission, Docket No. M-2012-2288561, filed Dec. 20, 2012), slip op. at 11-12); *see also Act 13 of 2012—Implementation of Unconventional Gas Well 10 Impact Fee Act*, *Proposed Rulemaking Order,* (Commission, Docket No. L-2013-2375551, filed Oct. 17, 2013) slip op. at 16-17 n.23.

### B. Factual Background

Against that statutory and administrative backdrop, the Petition alleges the following facts. Rockdale owned and operated the wells at issue through the entirety of 2021. In addition, Rockdale held a permit issued by the Pennsylvania Department of Environmental Protection (DEP) allowing it to sever natural gas for sale, profit, or commercial use from the unconventional wells; thus, Rockdale was a

"producer" as defined by Section 2301 of Act 13, 58 Pa.C.S. § 2301, and was subject to the annual impact and spud fees. Pet. ¶¶ 45-49. Rockdale paid the impact and spud fees in April 2018, 2019, 2020 and 2021. *Id.* ¶¶ 50-51.

In September of 2021, Rockdale filed a bankruptcy petition in the United States Bankruptcy Court for the Western District of Pennsylvania (Bankruptcy Court). Pet. ¶ 52. Rockdale filed with the Bankruptcy Court a motion for the approval of bidding procedures for the sale of substantially all of its assets, including the 72 unconventional gas wells at issue here. *Id.* ¶ 53. Repsol and Rockdale entered into a purchase and sale agreement (Sale Agreement) whereupon Repsol would acquire substantially all of Rockdale's assets, including the unconventional gas wells. *Id.* ¶ 54. In a December 29, 2021 order, the Bankruptcy Court granted Rockdale's motion for approval of bidding procedures and the Sales Agreement. *Id.* ¶ 55. The sale closed on January 19, 2022, and Repsol assumed ownership of the unconventional gas wells effective January 1, 2022. *Id.* ¶¶ 56-57. Transfer of all applicable permits from Rockdale to Repsol did not occur until June 22, 2022. *Id.* ¶ 58.

On February 9, 2022, Rockdale filed an Act 13 report for the subject wells with the Commission. Pet. ¶ 61. On that same day, the Commission issued Rockdale an Impact Fee Statement in the amount of $1,428,100 for the period of January 1 through December 31, 2021 (2021 Impact Fees), along with a Spud Fee Statement in the amount of $3,600 for the same period (2021 Spud Fees). *Id.* ¶¶ 62-63. Rockdale's bankruptcy plan administrator, however, objected to Rockdale's obligation to pay the 2021 Impact Fees because the impact fees were not taxes entitled to priority under bankruptcy law, the Commission failed to file a timely

4

proof of claim in the bankruptcy proceedings, and the impact fees should be paid as a general unsecured claim. *Id. ¶ 69.*

Meanwhile, the Commission filed with the Bankruptcy Court a motion to interpret, implement, and enforce the sale transaction. Pet. ¶ 72. It sought a determination by the Bankruptcy Court as to which party was obligated to pay the 2021 impact fees. *Id.* The motion did not address the 2021 spud fees. *Id.* ¶ 73. On October 28, 2022, the Bankruptcy Court issued an order finding that Rockdale and Repsol "specifically and unambiguously" defined impact fees in the Sales Agreement as taxes, and that the payment of taxes attributable to the period before January 19, 2022 (the date of closing of the sale), was allocated to Rockdale. *Id. ¶¶* 72-74.

On November 30, 2022, the Commission sent an Impact Fee Statement to Repsol for the wells at issue in the amount of $1,428,100 for the period of January 1, 2021, through December 31, 2021. Pet. ¶ 75. For the same period, the Commission also sent Repsol a Spud Fee Statement in the amount of $3,600. *Id. ¶* 76. Both statements were backdated to February 9, 2022 (the day Rockdale filed its 2021 Act 13 report and the Commission issued the 2021 Impact Fee and Spud Fee Statements to Rockdale). *Id. ¶ 78.* Further, both Statements were marked "PAST DUE".[1] *Id. ¶ 80.*

On December 6, 2022, the Commission filed a motion for leave to file proof of claim in the Bankruptcy Court. In the motion, the Commission stated that it had "begun the process to initiate state court proceedings against Repsol for the 2021 Impact Fees and asked the Court to consider its proof of claim for those fees timely filed pending the result of [the] state court proceedings against Repsol." Pet.

---

[1] Act 13 provides a producer 30 days from the Commission's notice to remit payment. 58 Pa.C.S. § 2303(c)(2).

5

¶¶ 81-82 (internal quotation marks omitted). Repsol avers that it has advised the Commission that Repsol remains opposed to the imposition of the 2021 Impact and Spud Fees. *Id.* ¶ 83.

The Bankruptcy Court scheduled a hearing on the motion to file proof of claim for May 24, 2023. Pet. ¶ 113. Prior to the hearing, the Plan Administrator and the Commission reached a settlement agreement that was entered as an order of the Bankruptcy Court. Pursuant to the order, Rockdale agreed to pay the Commission $100,000 in full satisfaction of the liabilities asserted against the estate through the Commission's impact and spud fee invoices. *Id.* ¶ 119. In exchange, the Commission agreed to waive its right to seek any further payment or distribution under the Rockdale Plan, the Rockdale Debtors' bankruptcy estates, or from the Rockdale Plan Administrator on account of the Commission Impact and Spud Fee Invoices. *Id.* ¶ 120. Further the Commission reserved "any and all rights it may have against Repsol in connection with the impact and spud fees pursuant to Act 13 associated with Repsol's acquisition of assets, the Sale Agreement and/or the Sale Order and the Commission Impact and Spud Fees Invoices." *Id.* ¶ 121 (internal quotation marks omitted). The agreement also indicated that it would not impact any action the Commission may pursue involving Repsol and Repsol's liability for payment of impact and spud fees. *Id.*

Repsol maintains it initiated this action because it was "[f]aced with the prospect of remitting payment to the Commission for fees it does not owe without the possibility of a refund [] or withholding payment and risking incurring significant sanctions (and indefinite threat of an enforcement action)." Pet. ¶ 104.

## C. Procedural History

In December of 2022, Repsol filed a petition for review in the nature of a complaint for declaratory and injunctive relief against the Commission and DEP. Thereafter, Repsol filed an application for relief in the nature of a preliminary or special injunction and stay pending final disposition of a related bankruptcy case. By order dated February 24, 2023, the Court denied that application. The Court also denied Repsol's application for reconsideration of that order.

Repsol amended its petition for review in response to the Commission's first set of preliminary objections. Thereafter, Repsol filed an application for relief seeking to discontinue its action as to DEP, which the Court granted. The Commission then filed new preliminary objections to Repsol's amended petition for review. In response, on May 17, 2023, Repsol further amended by filing the present Petition.

The Petition seeks declaratory and injunctive relief against the Commission only, in four counts. Count I seeks a declaration that a producer *actually* filing an Act 13 report on April 1 of a calendar year is the person liable to pay the impact and spud fees then due. In support, the Petition alleges that the Commission is misapplying Act 13, and Repsol is not the liable producer, because Rockdale owned, operated, and held permits for the wells for the entirety of 2021; Repsol did not obtain a permit until June 22, 2022 (after the report and fees were due) and it was Rockdale, not Repsol, that actually filed the annual report for the wells in February 2022 and originally received the Commission's invoice for the impact fee. Pet. ¶¶ 147-52. Count II seeks a declaration that, if an entity other than the producer actually filing the annual report must pay the impact fee (i.e, if the producer *responsible for* filing the report must pay) this interpretation by the

7

Commission would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution by failing to provide Repsol with fair and adequate notice that it would be liable for the impact fee due in 2022. Pet. ¶¶ 154-65. Counts III and IV mirror Counts I and II, respectively, but regarding spud fees as distinct from impact fees.

## II. ISSUES

The Commission raises six preliminary objections. First, it asserts that Repsol has failed to exhaust available administrative remedies, and that the Commission is best situated to develop a factual record via administrative adjudication at this time, such that declaratory relief in our original jurisdiction is improper. Second, the Commission demurs to all counts on the basis that Repsol lacks standing to seek declaratory relief because it is not aggrieved absent a final adjudication of liability for the fees by an administrative law judge and/or the Commission. Third, the Commission demurs to all counts on the basis that Repsol's claims are not ripe, and will not be ripe until an administrative hearing on which findings of fact can be made. Fourth, as to Counts I and III, the Commission demurs for failure to state a claim, based on putative inconsistency between what Repsol has conceded is the Commission's controlling interpretation of Act 13 (that the producer *responsible for* the report must pay the impact fee) and the declaratory relief Repsol requests (that the producer *actually filing* the report must pay). Fifth, as to Counts II and IV, the Commission asserts essentially the same demurrer for failure to state a claim as it did for Counts I and III, but with respect specifically to spud fees. Lastly, the Commission objects that the Petition includes scandalous or impertinent matter in the form of references to preliminary injunctive relief, which the

8

Commission argues is impertinent because the Court had already denied Repsol's request for preliminary injunction before it filed the present version of the Petition.

Repsol's application for summary relief, which is also before the Court, raises the issue of whether Repsol is clearly entitled to the relief it seeks and whether there is any issue of material fact in dispute. *See Leach v. Turzai*, 118 A.3d 1271, 1277 n.5 (Pa. Cmwlth. 2015), *aff'd*, 141 A.3d 426 (Pa. 2016). Repsol argues it is undisputed that Repsol did not hold a permit to operate the wells at issue until after the April 1, 2022 filing deadline. Thus, in Repsol's view, it is undisputed that Repsol was not a "producer" subject to Act 13 fee liability for the 2021 calendar year as of April 1, 2022, the date those fees were due.

### III. DISCUSSION

When deciding preliminary objections, we accept as true all well-pleaded material facts and all reasonable inferences from those facts. *Phantom Fireworks Showrooms, LLC v. Wolf*, 198 A.3d 1205, 1214 n.6 (Pa. Cmwlth. 2018) (*en banc*). We need not accept unwarranted factual inferences, conclusions of law, arguments, or opinions. *Id.* To sustain preliminary objections, it must be clear that the law will permit no recovery, even resolving doubts in favor of the non-movant. *Id.*

Further, we will grant a Pa.R.A.P. 1532(b) application for summary relief in our original jurisdiction only if there are no disputes of fact. *Phantom Fireworks Showroom*, 198 A.3d at 1220. Summary relief "is appropriate where a party asserts a challenge to the constitutionality of a statute *and* no material facts are in dispute." *Id.* (emphasis added).

9

## A. Preliminary Objection 1—Exclusive Jurisdiction and Failure to Exhaust Administrative Remedies

The Commission first argues that Repsol has failed to exhaust an available and adequate administrative remedy provided in Chapter 23 of Act 13, citing 58 Pa.C.S. §§ 2307-2309. Those sections describe the process for imposing and collecting Act 13 impact and spud fees. Section 2307 authorizes the Commission "to make all inquiries and determinations necessary to calculate and collect the fee" and "issue a notice of the amount due and demand for payment." 58 Pa.C.S. § 2307(a)-(b). Section 2308 provides consequences of nonpayment. It imposes interest and a penalty (capped at 25% of the fee) for delinquent fees. *Id.* § 2308(a)-(b). It also provides that for any delinquent fee, "[i]f the producer does not have a pending appeal[2] related to payment of the fee in process, [DEP] shall suspend the permit for that well until the fee has been paid." *Id.* § 2038(c). Section 2309 authorizes the Commission to enforce its own orders entered pursuant to Act 13. *Id.* § 2309. The Commission's enforcement orders are immediately effective upon entry and subject the ordered party to a contempt proceeding in this Court's jurisdiction. *Id.*

The Commission points to that statutory authorization as showing that it is the agency tasked with administering Act 13. Its position is that the fee invoices

---

[2] Act 13 does not further provide for or discuss the nature of any "appeal" from the Commission's initial imposition of impact and spud fees. The term *appeal* appears at only one other place in Act 13: when providing for appeal to this Court from the Commission's later order enforcing a fee previously imposed. *See* 58 Pa.C.S. § 2309(a). Act 13 provides for an administrative challenge before the Commission of certain assessments (to offset the Commission's cost of administering Act 13), which challenge proceeds pursuant to a section of the Public Utility Code, 66 Pa.C.S. §§ 101-3316, relating to assessment of regulatory expenses upon public utilities. *Id.* § 2303(c)(3) (referencing 66 Pa.C.S. § 510). That type of assessment is not at issue here.

it issued were produced by Commission staff and do not represent a final order of the Commission regarding liability for fees (as would be produced by the Commission's adjudication of a challenge to the fee invoices). And the Commission identifies at least one issue that Act 13 requires be resolved to finally determine Repsol's liability for the fees: whether Repsol was the *producer* of the wells as of April 1, 2022, and therefore liable for payment under the Commission's interpretation of Act 13.

The Commission emphasizes that determining whether Repsol was a producer at the relevant time is a fact-intensive inquiry. Repsol applied to DEP for well-operator permits on February 7, 2022, for the wells it purchased in January 2022. Although DEP did not approve the permit application until June 22, 2022—which is the date Repsol identifies as the trigger for *producer* status—DEP backdated the effective date of the permit to February 7, 2022, before the April 1 date relevant under Act 13. Further, the Commission notes that Repsol's emergency response plans filed with DEP were backdated to April 1, 2022, and that Repsol employees were communicating with DEP enforcement officials regarding outstanding violations as early as January 2022. Finally, the Commission notes that prior to April 1, 2022, Repsol became the owner of, and in reality was operating, the wells in question. It points out there has been no hearing or other factual development to allow the Commission to resolve these factual issues and then apply the Commission's interpretation of Act 13 to this specific dispute.

Tellingly, the Commission argues, Repsol began to engage in the proper administrative remedy before initiating this action. Repsol filed an objection to the impact and spud fee invoices with the Commission. But Repsol then immediately petitioned this Court for declaratory and injunctive relief, and the

11

Commission responded by ceasing action on Repsol's written objection to avoid acting inconsistently with this Court's exercise of original jurisdiction. The Commission argues it should hold a hearing on those objections and could then review (and, if needed, modify) its interpretation of Act 13 in ruling on the objections. At oral argument, the Commission represented that it would consider Repsol's written objections to be a petition for relief filed under Chapter 5 of the Commission's procedural regulations. *See* 52 Pa. Code § 5.41(a) (authorizing petitions for relief).[3] It also represented that it would render a final determination on those written objections after a hearing.

Finally, the Commission disputes Repsol's characterization of this matter as a pre-enforcement challenge to Act 13, because this matter does not involve a new statute or rule, does not affect the industry as a whole, and does not immediately affect Repsol because its liability for the fee is still subject to dispute before the Commission, which dispute the Commission could resolve in Repsol's favor.

In response, Repsol argues that Act 13 does not itself provide an administrative remedy that is available as of right to a producer. The only remedy Act 13 sets up, and the one the Commission says Repsol must exhaust, is a Commission-initiated enforcement action under Section 2309 of the Act. *See* 58 Pa.C.S. § 2309. Repsol cannot initiate an enforcement action, so it would be indefinitely subject to the Commission's enforcement discretion. In Repsol's view,

---

[3] Repsol essentially argues in its post-argument brief regarding the briefs of *amici curiae* that the Commission waived reliance on this procedural regulation by failing to cite it before oral argument. But the Commission's preliminary objections and argument have clearly contemplated further Commission action on Repsol's written objections to the invoices, and the question of the procedure applicable to that action is fairly encompassed within that issue. Thus, the Court will consider these procedural regulations in addressing the legal question of whether an adequate remedy is available.

that renders Act 13's enforcement process inadequate as a statutory remedy under *EQT Production Co. v. Department of Environmental Protection*, 130 A.3d 752, 759 (Pa. 2015) (holding that a petitioner's "inability in its own right to implicate the sole avenue available for quasi-judicial administrative review" supported this Court's acting in its original jurisdiction). Repsol adds that the Commission's general procedural regulations do not create an administrative remedy. It argues that the Commission established those regulations by authority granted in the Public Utility Code, and that Act 13 references the Code only once in relation to an administrative assessment not at issue here. *See* 58 Pa.C.S. § 2303(c)(3) (referencing 66 Pa.C.S. § 510).

Repsol also maintains that no exhaustion is required because this is a pre-enforcement challenge. Repsol argues that the Commission's proposed interpretation of Act 13, which gives the Commission the authority to make a producer who acquires an unconventional gas well retroactively liable for reporting paying fees, is of fundamental import to the way Act 13 liability operates. Repsol argues that interpretation puts it and other producers at risk of incurring substantial monetary sanctions for failing to comply with Act 13, and so justifies declaratory relief prior to exhaustion of administrative remedies.

Finally, Repsol asserts that no factual development is needed, so an administrative proceeding would be unnecessary. Repsol argues that all of the factual questions surrounding Repsol's involvement with operating the wells in 2022 are irrelevant because DEP did not formally issue Repsol an operator permit until June 2022, after the April 1 deadline for the producer to file the Act 13 report, which the Commission has stated is also the entity who must pay the fees. In Repsol's

view, it was indisputably not a *producer* until June 2022, and thus cannot be liable to pay fees that were due April 1, 2022.

It is well established that before invoking this court's original jurisdiction, a party must exhaust any adequate statutory or administrative remedy.[4] *Canonsburg Gen. Hosp. v. Dep't of Health*, 422 A.2d 141, 144 (Pa. 1980); *Funk v. Dep't of Env't Prot.*, 71 A.3d 1097, 1101 (Pa. Cmwlth. 2013); *Keystone ReLeaf LLC v. Dep't of Health*, 186 A.3d 505, 513 (Pa. Cmwlth. 2018) (*en banc*). If there is another adequate remedy available, courts must refrain from exercising equity jurisdiction to adjudicate declaratory relief. *Keystone ReLeaf*, 186 A.3d at 513-14. This requirement prevents premature judicial intervention in the administrative process and ensures claims will be addressed by the body with expertise in the area. *Funk*, 71 A.3d at 1101. Inextricably linked with the agency's exercise of expertise and discretion is the need to develop an adequate factual record so that the agency's decision is not made in the abstract. *See Keystone ReLeaf,* 186 A.3d at 518.

There are three conventional exceptions to this rule, allowing a party to avoid exhausting the remedy where "the jurisdiction of an agency is challenged," "the constitutionality of a statutory scheme or its validity is challenged," or "legal or equitable remedies are unavailable or inadequate." *Id.* at 514 (quoting *Empire Sanitary Landfill, Inc. v. Dep't of Env't Res.*, 684 A.2d 1047, 1054 (Pa. 1996)).

Our courts have thoroughly developed a more specific exception to the exhaustion doctrine for pre-enforcement challenges to statutes or regulations, which Repsol invokes here. This *Arsenal Coal* line of cases, as it is commonly called,

---

[4] "The terms 'exhaustion of statutory remedies' and 'exhaustion of administrative remedies' are at times used interchangeably in our decisional law." *Off. of Governor v. Donahue*, 98 A.3d 1223, 1231 n.6 (Pa. 2014). The latter term more often refers to an administrative appeals process created by agency rule or regulation. *Id.*

14

allows a party to come straight to court for declaratory relief without exhausting an administrative remedy, but only under certain conditions. *See Arsenal Coal Co. v. Dep't of Env't Res.*, 477 A.2d 1333, 1338 (Pa. 1984); *Bayada Nurses, Inc. v. Dep't of Labor and Indus.*, 8 A.3d 866, 874-76 (Pa. 2010); *EQT Prod. Co.*, 130 A.3d at 758; *Pa. Indep. Oil & Gas Ass'n v. Dep't of Env't Prot.*, 135 A.3d 1118, 1128 (Pa. Cmwlth. 2015) (*en banc*) (*PIOGA*). The purpose of pre-enforcement review is to save a petitioning party, and all others similarly situated, from having to choose between two unworkable options: complying with a law of new or questionable application—at substantial cost and with uncertainty going forward—or willfully violating that law to provoke enforcement so as to challenge it. *Firearm Owners Against Crime v. Papenfuse*, 261 A.3d 467, 486 n.14 (Pa. 2021).

Because pre-enforcement review is an exception to the general rule of exhaustion, its application is limited. First, if the third option of an administrative adjudication exists which the petitioner could pursue without any "immediate obligation or threat posed by the challenged agency action," the petitioner must pursue the administrative remedy first. *Marcellus Shale Coal. v. Dep't of Env't Prot.*, 216 A.3d 448, 498 (Pa. Cmwlth. 2019) (*en banc*). Second, where the petitioner's concerns are not industry-wide, but are instead about "application of the statute or regulation in a particular case," courts typically require exhaustion and disfavor pre-enforcement review. *Keystone ReLeaf*, 186 A.3d 505, 514; *see also Marcellus Shale Coal.*, 216 A.3d at 498 (denying relief in part based on failure to exhaust remedy where the Court did "not perceive any current threat to the industry that would justify pre-enforcement intervention"); *Pocono Manor Invs., LP v. Dep't of Env't Prot.*, 212 A.3d 112, 118 (Pa. Cmwlth. 2019) (noting that pre-enforcement review requires "industry-wide concerns"); *PIOGA*, 135 A.3d at 1128 (allowing pre-

enforcement challenge that was "essentially[] an industry-wide challenge to [the agency's] permitting process" that "will affect th[e] entire industry," and citing *Bayada Nurses*). Third, it is *pre*-enforcement review, so the regulation is typically immediately effective and self-executing absent any agency action to apply or enforce it. *PIOGA*, 135 A.3d at 1126.

Addressing the *Arsenal Coal* exception to exhaustion first, we note that none of the usual aspects of a pre-enforcement challenge appear here. Repsol is not challenging a new statute or a new agency interpretation of that statute. Its challenge comes after, not before, the Commission took action to apply Act 13 to Repsol. Repsol's challenge is thus not brought in the hypothetical or abstract as is typical of pre-enforcement review. It is concrete and laden with distinctive facts—a bankruptcy, agreements allocating ownership and liability for the wells, the transfer of ownership and operation to varying factual degrees over time, and Repsol's acquiring an operating permit that was then back-dated to a point that arguably makes Repsol liable under Act 13. This matter is fact intensive; it is not tantamount to an industry-wide challenge to action by the Commission. *Cf. PIOGA*, 135 A.3d at 1128. Moreover, administrative review that the petitioner can initiate is adequate unless the statute or regulation itself causes actual, present harm. *Cf. Bayada Nurses,* 8 A.3d at 876 (holding that change to interpretation of regulation resulted in a direct and immediate impact on the home health care industry in general).

*EQT Production* does not support Repsol's argument for pre-enforcement review such that no exhaustion is necessary. 130 A.3d at 759. There, an unconventional well operator inadvertently discharged contaminated water, triggering potential statutory civil penalties of more than $4.5 million, plus an open-ended increase of $10,000 per day based on ongoing violations. DEP initially

16

proposed that the operator enter into a consent agreement to pay the penalties. *Id.* at 754. The operator then filed a declaratory judgment action in this Court's original jurisdiction. After that action was filed, DEP filed a complaint before the Environmental Hearing Board to collect those penalties (including the ongoing amounts). A single judge of this Court dismissed the action on preliminary objections as to justiciability. The Supreme Court reversed, and for three reasons concluded that no exhaustion was required. Each reason is distinguishable from the case now before us.

First, in *EQT Production*, the amount of the penalties imposed was open-ended and growing continuously by at least $10,000 per day. *Id.* at 755. Here, the amount of the fee is already known and fixed, subject only to interest and a statutory penalty of, at most, 25% of the fee. Further, the Commission would not impose discretionary penalties where there is a good faith challenge to impact and spud fees. *See Pub. Utility Comm'n, Bureau of Investigation and Enf't v. Snyder Brothers, Inc.*, (Commission, Docket No. C-2014-2402746, filed June 11, 2015), slip op. at 59, 67. And if the administrative process results in a finding that Repsol is not responsible for the fees, then the Commission could not impose interest or penalties. The fixed nature of the amount in dispute here is distinguishable from the ever-growing fees in *EQT Production*.

Second, *EQT Production* involved only questions of law and no factual development was necessary to answer those questions. There, our Supreme Court noted that its

> decision might be different had the [agency] advanced a persuasive case that there are material factual dynamics involved in evaluating the validity of its [statutory] interpretation . . . . Here, however, [the agency] has limited its argument . . . [to] a conclusory pronouncement of a

17

> need to develop a full factual record . . . . This presentation offers little to contradict [the petitioner's] assertion that its challenge to the agency's [statutory] interpretation presents only questions of law presently amenable to judicial review.

*EQT Prod.*, 130 A.3d at 759. Here, the Commission has gone far beyond a boilerplate statement that a record is needed. It identifies several factual questions that must be determined about when and how Repsol began to "hold[] a permit or other authorization" to operate the wells, which controls its status as a *producer* and thus its liability. 58 Pa.C.S. § 2301. Did Repsol receive "other authorization" from Rockdale to operate the wells before formally acquiring a permit from DEP? And which permit date controls—the effective date, which was back-dated to the date of application, or the date the permit was actually issued? Unlike the agency in *EQT Production*, the Commission has persuasively argued that these questions require development of a factual record. And contrary to Repsol's position, those questions are legally relevant. A party's *producer* status is not a pure question of law; per Act 13's controlling text, it turns on whether and when that party was authorized, by permit or otherwise, to sever natural gas. The Act does not obviously make the date of issuance of an operation permit by another agency (here, DEP) dispositive of liability for Act 13 fees.

Third, the petitioner in *EQT Production* could not initiate any administrative remedy because of that matter's procedural history. There, the declaratory judgment action was filed before any action by the agency beyond negotiation with the producer. The Supreme Court reasoned that even if the after-filed action before the Environmental Hearing Board afforded some after-filing remedy, it was not enough to alleviate the petitioner's hardships. *EQT Prod.*, 130 A.3d at 759. Here, by contrast, the Commission has issued the invoices first, and

18

Repsol had already commenced that challenge by filing written objections to the invoice before filing this action. Given these differences, *EQT Production* and the other *Arsenal Coal* cases are distinguishable, and we conclude that this matter does not warrant pre-enforcement review.

We turn, then, to whether the available administrative remedy is adequate such that Repsol must exhaust it. Repsol's main contention is that the only remedy the Commission has identified is Act 13's authorization for enforcement orders by the Commission, which would leave Repsol at the whim of the Commission's enforcement power. But that is not the only remedy the Commission has identified for exhaustion. The remedy Repsol can seek, and has essentially already begun to seek, is to challenge the fee invoices before the Commission, obtain a final determination of that challenge from the Commission (which would also encompass a denial or effective denial of the challenge) and then seek appellate review of that determination in this Court.

It is not hard to imagine how that administrative remedy would proceed. The Commission would ordinarily be subject to the General Rules of Administrative Practice and Procedure (GRAPP) applicable to administrative agencies generally. *See* 1 Pa. Code Part II. But the Commission has promulgated its own procedural rules that displace GRAPP in Part I, Subpart A of the Commission's regulations. *See* 52 Pa. Code §§ 1.1-5.633. Those procedural rules apply by their terms to "practice and procedure before the Commission," *id.* § 1.1(a), and a petition for relief may be filed under Chapter 5 of the regulations with respect to "the [Public Utility Code] or *other statute that the Commission administers*," *id.* § 5.41(a). Act 13 expressly obligates the Commission to administer it, so a party may, per the Commission's procedural rules, file a petition for relief before the Commission

under Act 13. The Commission would hold a hearing on that petition (under Chapter 5, Subchapter B of its regulations, 52 Pa. Code §§ 5.201-5.254) from which exceptions or an appeal could be taken (under Chapter 5, Subchapter H, 52 Pa. Code §§ 5.531-5.539) within the Commission.

In addition to these procedural rules, the Commission is governed by the Administrative Agency Law, which requires that "no adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard." 2 Pa.C.S. § 504. The Commission has not yet afforded a hearing, nor has Repsol formally requested one. If the Commission finally denies Repsol a hearing on the objections Repsol has already filed, Repsol could challenge that denial of a hearing in this Court's appellate jurisdiction. 42 Pa.C.S. § 763(a)(1); *O'Brien v. State Employes' Ret. Sys.*, 469 A.2d 1008, 1011 (Pa. 1983) (holding that an action to compel an agency to hold an administrative hearing is properly in Commonwealth Court's appellate, not original, jurisdiction).

That structure—initial agency action, hearing before the agency, final agency action, and appeal to Commonwealth Court—prevents unnecessary filings in this Court's original jurisdiction that would allow as-of-right appeals to the Supreme Court. *Simmons v. Cohen*, 534 A.2d 140, 145 (Pa. Cmwlth. 1987), *aff'd sub nom. Simmons v. White*, 574 A.2d 600 (Pa. 1990). "Of course, if an agency refuses to act on a request for hearing in an effort to avoid a final decision that allows appeal, [we are] certainly not . . . powerless to proceed originally under Section 761 [of the Judicial Code, 42 Pa.C.S. § 761]." *O'Brien*, 469 A.2d at 1011 n.8. But here, the Commission has not *refused* to afford a hearing. Instead, it stayed agency action out of deference to the action Repsol filed in this Court.

20

Thus, an administrative remedy is available, even apart from the Commission's entry of an enforcement order under Section 2309 of the Act or a proceeding for contempt thereon. Whether that remedy is adequate for purposes of exhaustion depends on whether it "allow[s] for adjudication of the issues raised" and minimizes "irreparable harm to . . . the [petitioner] during the pursuit of the . . . remedy." *Keystone ReLeaf*, 186 A.3d at 517. To overcome the requirement for exhaustion, the petitioner must make a clear showing that the remedy is inadequate. *Id.* As we have discussed, unlike the open-ended fee in *EQT Production*, there is minimal risk to Repsol during an administrative remedy. There is no indication the Commission would proceed to enforce or collect the fixed fees during administrative proceedings on Repsol's objections. If the Commission does initiate such enforcement, Repsol has a remedy there too, which would also culminate in our appellate, not original, review. That is essentially what occurred in *Snyder Brothers*—the agency filed a complaint to collect past-due Act 13 fees, the matter was heard before a Commission administrative law judge, that judge's order was appealed to the Commission, and then this Court heard the appeal from the Commission's decision. 198 A.3d at 1059. If the Commission does not initiate enforcement, the administrative proceeding on Repsol's objections will, as discussed, afford a hearing and opportunity for the Commission to determine whether Repsol is liable for the fees assessed. That determination could come out in Repsol's favor. If it does not, and if the Commission determines that interest and penalties should accrue for Repsol's not having paid the invoiced fees in the interim, all of those determinations are reviewable on appeal to this Court.

# IV. CONCLUSION

The legal issues the Petition raises are complex and should be decided on a concrete factual record—a record which has not yet been developed in this case. An administrative remedy exists to allow that development, and to allow the Commission to consider how it will apply Act 13 to these facts. That remedy is adequate because it allows Repsol to pursue it, including through judicial review, without immediate risk of further increasing its liability. We hold that Repsol must continue to pursue and exhaust that remedy before it can proceed on the Petition, and we thus sustain the Commission's first preliminary objection to the Petition and dismiss the Petition.[5]

_____
MATTHEW S. WOLF, Judge

---

[5] Given this conclusion, we dismiss as moot the Commission's remaining preliminary objections without deciding them, and we dismiss Repsol's application for summary relief as moot.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Repsol Oil & Gas USA, LLC, : 
:
Petitioner :
:
v. : No. 613 M.D. 2022
:
Pennsylvania Public Utility :
Commission, :
:
Respondent :

# **O R D E R**

AND NOW, this 23rd day of July 2024, Respondent's preliminary objections on the basis that Petitioner has failed to exhaust administrative remedies are SUSTAINED and Petitioner's second amended petition for review is DISMISSED. Further, Respondent's remaining preliminary objections and Petitioner's application for summary relief are DISMISSSED as moot.

_____
MATTHEW S. WOLF, Judge